## D. W. SALISBURY & others *vs.* WILLIAM T. ANDREWS & others.

Suffolk.  Nov. 18, 19, 1879. — Feb. 16, 1880.  MORTON & SOULE, JJ., absent.

Two tenants in common of a large tract of land, fronting on a highway in a city, laid out over it a way running from the highway towards the rear of the tract and then turning and running at a right angle and parallel with the highway. Fronting on this way they erected four houses and one house whose front abutted partly on the way.  They also purchased a parcel of land adjoining their other land in part, and on which was a private way called D. Court, running from the highway towards the rear of the land.  Subsequently they divided both parcels among themselves by a deed of partition, excluding that part over which the way ran.  In this deed, one of the boundary lines was described as running "to land left and now used for a passageway in C. Court;" other lines were described as running by "the way" or by "the way or court;" monuments were described as being at a certain distance from the houses in "said court;" the houses were described as being "in C. Court;" and the width of the way in different places was stated.  The deed also provided that all of the land first bought, not therein conveyed, should "be left and always lie open as a way for the common use and benefit of both of said parties and their said respective estates;" and that the "court" should be continued over the land last bought to D. Court, and that each party should have a right of way over D. Court "for the common use and benefit of themselves and of their respective estates;" that each party might make sidewalks "in the said court" in front of the lots assigned to him, and maintain steps in front of the houses, "so as the said sidewalk and steps shall never be extended or widened to obstruct the convenient passing of carriages in said court."  On one of the lots conveyed by this deed was a house the front of which abutted on C. Court for only a few feet, the rest of the front abutting on the grantee's land set off to him in the same deed.  He subsequently conveyed this house by a deed which did not contain the usual clause, "with all privileges and appurtenances," and which described the house as being "No. 4 in C. Court," and conveyed it by metes and bounds, the front line being "on a line with the front of said house," together with the land in front of the house, under the stone steps "with a right to pass and repass on foot and with horses and carriages to said house and land through said C. Court at all times."  *Held,* that the last-named grantee had not only a right of way over C. Court, but also a right to have the whole court kept open for light and air.

BILL IN EQUITY, filed October 12, 1878, by the owners of a parcel of land with a building thereon situated in Central Court in Boston, alleging that the first-named defendant was the owner of an adjoining parcel of land and of a parcel on the opposite side of the court, and the other defendants were the lessees of the same; that the defendants were erecting a bridge over the court to connect the buildings' on the two estates,

whereby egress from the plaintiffs' land would be greatly obstructed, and the light and air shut off; that the plaintiffs were entitled to a right of way over Central Court, and to the full use and enjoyment of the same.

The prayer of the bill was for an injunction to restrain the defendants from erecting the bridge; that they be ordered to remove the portion already built; and for further relief.

The defendants answered admitting the building of the bridge, and their respective ownerships in the two estates, denying that the plaintiffs had any rights in the court except a right of way, and also denying that this was obstructed.

The case, as it appeared at the hearing before *Morton*, J., was as follows:

In 1803, Jonathan Mason, the owner of an estate on Newbury (now Washington) Street in Boston, conveyed the same to Isaiah Thomas and Ebenezer T. Andrews, as tenants in common. They laid out over the land a private way, which ran from Newbury Street in a southeasterly direction about a hundred and fifty feet, and then turned at a right angle and ran in a southwesterly direction, parallel to Washington Street; and on this way erected a block of four houses and another house standing by itself.

On May 1, 1806, David Soley and John Larkin, who derived their title from John Soley, respectively conveyed to Ebenezer T. Andrews a piece of land adjoining in part that conveyed by Mason and fronting on Demming's Court, so called, which ran from Newbury Street in a southeasterly direction.

On July 23, 1806, Thomas and Andrews executed a deed of partition by which both parcels of land, excluding the way laid out by them and Demming's Court, were divided between them in severalty. The boundary line of the first lot, set off to Thomas, was described as beginning at a certain point on Newbury Street, and thence running northeasterly by said street "to land left and now used for a passageway in Central Court," thence "by said way" to a point a certain distance "from the block of four houses built by said Thomas and Andrews in Central Court," and "distant twenty-one feet and six inches from the single house built by them in said court;" thence southerly "by the way" to a certain point, "at which point the way

aforesaid is twenty-seven feet and six inches wide from the front of said block of houses;" thence southwesterly "by the way" to land formerly of John Soley. By this deed Thomas also took in severalty two of the block of four houses, "situate in Central Court aforesaid," and bounded by metes and bounds "on the way or court."

By this deed there was set off by metes and bounds to Andrews a piece of land, "situate in said Central Court," on which were the remaining two houses in the block of four houses, and the single house. One of the boundary lines was described as running "by the way or court aforesaid," and two of the other lines as running "by said way." This deed also conveyed to Andrews the land conveyed to Andrews by Larkin and Soley, and recited that this land had been previously conveyed to Andrews alone, but in trust for Thomas as to one moiety thereof.

The deed of partition also contained these clauses: "And it is hereby further covenanted, granted and agreed by and between the said parties to these presents, that all that part of the above-mentioned land conveyed to them by said Jonathan Mason, and which is not herein above assigned, set off and released to either of said parties, shall be left and always lie open for the passageway or court aforesaid, for the common use and benefit of both of said parties and their said respective estates. And also that so much of the land above mentioned formerly belonging to John Soley, deceased, as lies opposite to the southwest end of said way or court shall be in like manner left and always lie open as a way for the common use and benefit of both of said parties and their said respective estates, so that said court shall be continued in a straight line across the land formerly belonging to said Soley, to Demming's Court above mentioned, and also that each of said parties shall retain and have an equal right of way in and over said Demming's Court for the common use and benefit of themselves and of their said respective estates. And it is further agreed by and between said parties, that each party may make sidewalks in the said court, in front of the several parcels of land above assigned to them, respectively, in said court, and may also make and maintain convenient and necessary steps in front of their respective houses, and of any houses that may be hereafter built on said court, so as the said sidewalks

and steps shall never be extended or widened to obstruct the convenient passing of carriages in said court."

A plan used at the hearing showed that the front of the most northerly of the two houses set off to Andrews abutted upon Central Court, as laid out in the deed of partition, seven feet and two inches, and the remainder of the front abutted upon land set off to Andrews by the same deed.

On March 28, 1808, Thomas conveyed to Andrews the first parcel of land set off to Thomas in the partition deed, fronting on Newbury Street and running back to Central Court.

On April 24, 1824, Ebenezer T. Andrews conveyed to Henry Homes the most northerly of the two houses set off to Andrews in the deed of partition, described as follows: " A brick house, and the land under and adjoining the same, being No. 4 in Central Court in Newbury Street in Boston aforesaid, bounded and measuring as follows, viz. beginning in front of said house at the centre of the brick partition wall between this and the adjoining house, and running easterly on a line with the centre of said walls, and of the wooden partition between the wood-houses and necessaries of this and the adjoining estate, until it comes to land of S. P. Gardner (including half the wall situated between the two estates), about eighty feet nine inches; then turning and running northerly on a bevel line, bounded on said Gardner's land, until it comes to land of Samuel Salisbury, about twenty-seven feet six inches; then turning and running westerly, bounded northerly on said Salisbury's land, until it comes on a line with the front of said house, about eighty-five feet five inches; then turning and running southerly on a line with the front of said house, about twenty-seven feet two inches, until it comes to the centre of the brick partition wall first mentioned, together with the land in front of said house, under the stone steps, with a right to pass and repass on foot and with horses and carriages to said house and land through said Central Court at all times; said Homes to pay one half the expense of keeping the well in good order, and the expense of keeping the sidewalk in front of said house in good repair." The habendum of this deed was as follows: " To have and to hold the afore-granted premises to the said Homes, his heirs and assigns, to his and their use and behoof forever."

On April 28, 1831, Homes conveyed these premises, by the same description, to Samuel Salisbury, from whom the plaintiffs derived their title, which, for the purposes of the hearing, it was agreed was in fee.

On August 16, 1825, Ebenezer T. Andrews conveyed by metes and bounds to Charles Ewer, the lot of land conveyed to him by Larkin " in a place formerly called Demming's Court, but more recently a part of Central Court," " excepting a strip of land of about twenty feet wide on the easterly end of the estate, as then described, which. was added to Central Court, to connect the same with Demming's Court; " and released to Ewer and his heirs and assigns all his right, title and interest in Demming's Court, and consented to the discontinuance of the same, on con dition that the entrance of Central Court should be continued to the new court lately opened by Ewer, and remain forever open of the width of twenty-nine feet nine inches, " as at present established, and said new court, from Central Court to Washington Street, shall be a free passage for all the abutters on said Central Court."

Ebenezer T. Andrews acquired in 1832, by deed from the devisees of Isaiah Thomas, the two houses in the block of four set off by the partition deed to Thomas ; and died, October 9, 1851, intestate, leaving as his only child and heir at law the defendant William T. Andrews, who it was agreed inherited all the rights of his father.

In the fall of 1878 William T. Andrews built the bridge complained of, which connected the estate conveyed by Thomas to Andrews in 1808, and the estate conveyed by the devisees of Thomas to Andrews in 1832. The lowest part of this bridge was seventeen feet and eight inches above the roadway, and the bridge itself, no part of which touched the roadway, was covered over, with windows in the sides, and was thirteen feet and six inches high and ten feet broad. The nearest point of the bridge to the plaintiffs' house was between thirty-seven and thirty-eight feet.

Central Court was extended to Demming's Court, as contemplated in the partition deed between Andrews and Thomas. Demming's Court was afterwards discontinued, and Central Court was afterwards extended to Avon Place, now Avon Street.

The first-named plaintiff testified that the premises of the plaintiffs were the same as those conveyed by Ebenezer T. Andrews to Homes, then known as No. 4 Central Court, now being No. 7 Central Court; that the house standing thereon was one of the block of four houses mentioned in the partition deed; that the house never covered the whole of the premises conveyed by the deed to Homes, but on the north side thereof was an alleyway, something over four feet wide, leading to the rear of the house, at the front end of which alley-way, on a line with the front of said house, there is now and always has been a gateway opening upon the sidewalk; that a door is now and always has been maintained, leading under the steps of the house on the northerly side, and opening upon said sidewalk, which sidewalk was embraced in the land set off in fee to Andrews by the partition deed; that when the house was conveyed by Andrews to Homes the house was two stories high above the basement, since which time a third story has been added.

The tenant of the plaintiffs testified that the bridge was an obstruction to light and sun in the first story above the basement of the front part of the house; that the sun used to come in there in the afternoon for two or three hours, but now does not come in at all; that the bridge is an objection in rainy and snowy weather; that the water and melted snow run down in streams on either side of the bridge, and during sleighing it is a further objection that underneath the bridge is a place bare from snow, making bare ground under the bridge; that the bridge obstructs the view of his lantern from Avon Street.

The plaintiffs also put into the case the report of the case of *Salisbury* v. *Andrews*, 19 Pick. 250.

The case was reserved for the determination of the full court, and for such judgment as justice might require.

*H. G. Parker*, (*H. W. Suter & F. Dabney* with him,) for the plaintiffs.

*J. D. Ball*, for the defendants. 1. By the deed of partition between Thomas and Andrews, executed in 1806, merely a passageway was laid out. The land was " always to lie open for the passageway or court aforesaid; " a portion of the Soley land was also to lie open " as a way; " each party was to have an equal " right of way " over Demming's Court; and sidewalks and steps

in Central Court were never to be extended so as to obstruct the convenient passing of carriages.

2. Whatever might be the effect of the deed of partition as between the parties thereto, yet, when either of them conveyed any portion of his land, he had the right to impose such limitations and restrictions as he pleased. *Grant* v. *Chase*, 17 Mass. 443. *Ritger* v. *Parker*, 8 Cush. 145. *Atwater* v. *Bodfish*, 11 Gray, 150. *White* v. *Chapin*, 12 Allen, 516. In the deed from Andrews to Homes, under which the plaintiffs claim, the front boundary is on a line with the house, the land under the steps is conveyed, " with a right to pass and repass, on foot and with horses and carriages, to said house and land, through said Central Court, at all times;" and this is all. The grantor is so careful to guard and qualify the rights given to the grantee, that he omits the words " privileges and appurtenances."

As the plaintiffs have not a right to light and air, but merely a right of way, and as this right of way has not been interfered with, there should be judgment for the defendants. *Atkins* v. *Bordman*, 2 Met. 457.

LORD, J. In this case there is no material fact in dispute between the parties. The controversy is solely as to their respective rights in law, upon undisputed facts.

In 1803 the whole of the land, on which are the passageway in question and the estates of the plaintiffs and defendants, was owned in equal parts by Isaiah Thomas and Ebenezer T. Andrews, as tenants in common in fee simple. Between 1803 and 1806 they had laid out this passageway, and had so wrought or constructed it as to indicate to a great extent its nature and purposes. A single building and a block of buildings had been erected fronting upon it, and sidewalks of brick, if not then actually made, were evidently in contemplation, as appears not only from the width of the court, but from the first deed of conveyance by Andrews of the estate now owned by the plaintiffs, in which the sidewalks are particularly mentioned, and provision made for their being kept in repair; and between such actual or contemplated sidewalks was a passageway left suitable for carriages and vehicles drawn by horses or other animals. After this had been done, Thomas and Andrews, in 1806, by their deed of partition, conveyed to each other their respective

moieties in certain portions of the undivided property, so that each came to own his respective share in severalty; and then, for the first time, this passageway was accurately defined and described, and that description and the use to which it was then devoted are quite decisive of the character of the way.

On referring to the partition deed of 1806, it will be observed that, in bounding the first parcel which is to be held in severalty, the phrase is used "thence running to land left and now used for passageway in Central Court;" and the next reference is in these words: "from the block of four houses built by said Thomas and Andrews in Central Court;" and, again, "distant from the single house built by them in said court." And so through the whole partition deed, although the way is sometimes referred to simply as a way, yet when it is designated in any mode, it is called Central Court; and the deed itself provides that that way, as first located, "shall be left and always lie open for the passageway or court aforesaid for the common use and benefit of both the said parties and their said respective estates," and there was the further covenant between them as to the land as purchased in the name of Andrews, but in the interest of both, that so much of such land "as lies opposite to the southwest end of said way or court shall be in like manner left and always lie open as a way for the common use and benefit of both of said parties and their said respective estates, so that said court shall be continued in a straight line across the land formerly belonging to said Soley, to Demming's Court above mentioned, and also that each of said parties shall retain and have an equal right of way in and over said Demming's Court for the common use and benefit of themselves and of their respective estates."

It is thus manifest from this partition deed that the laying out of Central Court was for the purpose of bringing into use and into the market certain back or rear lands in such manner as that the same could properly and advantageously be used as dwellings or residences. A portion of the land thus divided by this deed of partition was in 1824 sold by Andrews to one Homes, who subsequently conveyed it to Salisbury, the father of the first-named plaintiff, and their rights in respect to said court were afterwards a subject of dispute before this court, in the case

of *Salisbury* v. *Andrews*, 19 Pick. 250; and Chief Justice Shaw, with his usual fertility and exhaustiveness of discussion, has expounded the principles upon which instruments of this kind are to be construed, which not only throw much light upon, but, in our judgment, settle the rights of the parties to this controversy. The result of that exposition is, that not only every clause and phrase in a deed, but every word, is presumed to have been used for some purpose and to accomplish some result, and that result is the intention of the parties; and while no evidence is competent to show that the parties meant something different from what the ordinary import of their language expresses, yet where the language used is of doubtful import, and where the precise purpose and intent of the parties is not expressly defined in words, the facts and circumstances surrounding the transaction, " such as the actual condition and situation of the land, buildings, passages, water-courses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense, in which particular words were probably used by the parties, especially in matters of description," are always proper to be considered.

Applying these principles, we have no doubt that the intention of the parties to that deed of partition was to establish what in cities is technically known as a court, and that that court was to be of the higher class of courts, not confined to one single mode of access and egress, but to be so connected with other avenues as that there might be passage through it, and not simply entrance into it with return only in the same mode as entered upon. It is clearly manifested also by said conveyance that the parties to it intended, not only that the buildings erected upon it should be fit for residences, but that the class and character of such residences had been indicated by the fact that they had jointly, while owning in common, built not only a single dwelling-house, but a brick block of four dwelling-houses; and that their purpose was to bring the remaining land into the same use, by themselves or their grantees, by attaching to their entire lands that court for the common use and benefit of themselves and their respective estates. And the language used by them has a peculiar force and significance in this respect. It says nothing of a right of way, or right to pass and repass either

over and through it or to or from any particular estate, but its language is especially adapted to the constitution of an open court partaking largely, if not entirely, of the nature of a public street. The language is: " And it is hereby further covenanted, granted and agreed by and between the said parties to these presents, that all that part of the above-mentioned land conveyed to them by said Jonathan Mason, and which is not hereinbefore assigned, set off and released to either of said parties, shall be left and always lie open for the passageway or court aforesaid, for the common use and benefit of both of said parties and their said respective estates."

The use and benefit of such a court became, therefore, attached to every part of their respective estates, and a grant of any part of the estate, even without express words, would carry such use and benefit as appurtenant to the land, and could not be detached from the land itself except by contract. It is therefore clear that this is not simply a right of way in the plaintiffs, and attached to their estate, but their right is to the use and benefit of an open court, and that right extends as well to the light and air above as to actual travel upon the surface of the earth; and, without the evidence of the tenant that the sun is now wholly excluded from the house in the afternoon, while formerly there were several hours of sunshine, the erection of such a structure, as that erected by the defendants is conceded to be, is of itself an infringement of the plaintiffs' right, and a nuisance to their estate, which they have a right to have abated.

*Decree for the plaintiffs.*