## GEORGE BLAINE *vs.* JOHN O. BRADY.

*When Equity will not Relieve—Irreparable mischief—Injunction—Destruction of the Inheritance.*

Equity never interferes where there is a plain and adequate remedy at law; and the mere allegation in a bill that irreparable damage will ensue, is not sufficient, unless facts be stated which will satisfy the Court that the apprehension of such injury is well founded.

A bill which prays for an injunction to restrain the defendant from maintaining an embankment erected on his own land as a protection against the overflow of an unnavigable stream dividing his land from that of the complainant, but which fails to state how often this stream has overflowed its banks by reason of heavy freshets, or how much of the complainant's land has been or is liable to be overflowed at such times in consequence of the embankment, does not present a case entitling the complainant to equitable relief.

Where all that can be inferred from what the complainant states in his bill, is, that when a heavy freshet may happen, the stream will, if the embankment complained of remains, overflow a portion of his land, and thereby destroy the crops, if any there be growing thereon at the time of such freshet, such a case is not made out as will warrant an injunction to restrain the defendant from maintaining the embankment.

Such an occasional overflow of a few acres of land, part of a farm of more than a hundred acres, does not work a destruction of the inheritance, nor justify the granting of an injunction in order to prevent irreparable mischief.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Daniel R. Magruder,* for the appellant.

*Jos. K. Roberts,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order refusing to grant the injunction asked for in the bill filed by the appellant, and dismissing the same with costs.

It appears from the bill and accompanying exhibit, that the complainant in May, 1878, purchased a farm in Prince George's County, containing about one hundred and seven acres, for the sum of $30 per acre, amounting in all to $3215.62. This farm adjoins on one side, an unnavigable stream of water known as the "Southwest Branch of the Patuxent River," on the opposite side of which is the land of the defendant, which is lower than that of the complainant, so that in times of heavy rains and freshets; when the stream is swollen and overflows its banks, such overflow found its natural outlet over the defendant's land, and little or none of it came upon the land of the complainant owing to its higher location.

The bill charges that this state of things has continued from time immemorial, and the complaint is that the defendant has recently erected an embankment on his own lands adjacent to the stream for the purpose of preventing this overflow of water thereon, whereby in times of heavy rains and freshets the overflow of water instead of passing over his lands, as it had been accustomed so to pass, has been thrown upon the complainant's land, thereby causing "a considerable portion" of the same to be submerged and drowned and the crops growing thereon to be entirely destroyed. It then charges that so long as this embankment shall be continued the portion of complainant's land so submerged will be rendered valueless, as it will be impossible to cultivate the same, and thus an irreparable injury to his land is caused and will be continued un--

less this embankment shall be removed by the aid of a Court of equity; that he has been credibly informed and believes and therefore charges that the defendant is engaged in preparing timber and other material for the purpose of erecting upon his said land other works and obstructions for the more full and effectual prevention of said overflow over his land, and of further and more fully, effectually and permanently causing the same to flow over and upon the land of the complainant; that by the natural conformation of complainant's land the water when thus thrown upon it has and can have no outlet therefrom but remains thereon to the permanent injury thereof, and to the ultimate and entire ruin and destruction thereof for the purpose for which it has always been used and enjoyed, to wit: for purposes of cultivation and for any other practicable or useful purpose. The bill also charges that the complainant has instituted an action at law against the defendant to recover damages for the injury thus occasioned to his land and crops, but he avers that such action and others which he may hereafter institute for the continued injury will afford him no adequate relief, and he will be subjected to a multiplicity of suits, to irreparable loss and injury, and to great delay, vexation, cost, and expense caused by tedious and protracted litigation, unless protected by a Court of equity from such acts of the defendant already committed and those which he is about to commit.

The bill then prays for an injunction restraining the defendant from maintaining the embankment already erected, and requiring him to remove the same, and also preventing him from erecting any others which will produce the same effect.

The case thus presented is not one in which a stream in its ordinary stage of water has been diverted from its natural course by an obstruction placed in its channel and between its banks, but one where a stream which flows

between the lands of two proprietors and ordinarily keeps within its banks and does no harm to either, but which in times of heavy freshets overflows its banks, and such overflow naturally spreads over the land of one of them, and where the proprietor of the land thus subject to be flooded has erected an embankment upon his own land to save it from such flooding. Whether he has the right to do this even if the consequence is to cast the overflow upon the land of the other proprietor unless he choses to make a similar embankment on his land and on his side of the stream, is a, question which in the view we have taken of it, need not be decided in this case. That point will be more appropriately presented for decision in the action at law.

The question immediately before us is, does this bill make out a case for the interposition of a Court of equity by way of injunction; and in deciding it we must bear in mind the familiar and well established rules that equity never interferes where there is a plain and adequate remedy at law, and that the. mere allegation in a bill that irreparable damage will ensue is not sufficient unless *facts* be stated which will satisfy the Court that the apprehensian of such injury is well founded. This latter rule was laid down in *Amelung vs. Seekamp,* 9 *G. & J.,* 468, and has been followed and re-affirmed in all the subsequent decisions in similar cases. Now as to the damage complained of as done to his land and crops, down to the time he brought his action at law, we think it quite certain the complainant can, if he succeeds in maintaining it, obtain in that action adequate and complete satisfaction. And as to the apprehension of future damages we find no facts stated sufficient to satisfy us that the continuance of this embankment will work irreparable injury to the complainant's farm, or the "destruction of the inheritance" in the sense in which these terms are used in the authorities. It is not stated how often in the past, this stream has over-

Blaine *vs.* Brady.

flowed its banks by reason of heavy freshets, nor how much of the complainant's land has been, or is liable to be overflowed at such times, in consequence of the embankment made or threatened to be made by the defendant. There is a vague and indefinite statement that a "considerable portion" of it has been overflowed, but he fails to inform us how much he considers a "considerable portion," whether one acre or ten. He does not say that the land or any part of it has been washed away, and all that we can infer from what he does state amounts simply to this, that when a heavy freshet may happen to occur in this stream the water will, if the embankment complained of remains, overflow a portion of his land and remain on it till absorbed in the soil or evaporated, and that the crops, if any there be growing thereon at the time, will be destroyed. In our judgment such occasional overflow of a few acres of land—part of a farm of more than a hundred acres, does not work a destruction of the inheritance, or justify the granting of an injunction in order to prevent irreparable mischief. Such a case seems to us to differ widely and substantially, not only in the facts but in principle from the destruction of timber which is essential to the use of a farm, the cutting down of trees which afford ornament and shade to a family mansion; the obstruction of a street in a populous city, the diverting of a watercourse from a mill, the digging of ore from a mine, the taking of stones of a peculiar value, or the destruction of an heirloom, or a work of art, or a family picture, which has a *pretium affectionis*. We are therefore clearly of opinion the complainant has failed to bring his case within that class of cases in which the extraordinary remedy by injunction ought to be applied.

If he succeeds in establishing his right in the action at law, he can obtain in that suit full compensation for the damage already done, and if the defendant shall then refuse to remove the embankment, and shall thereafter put

him to a multiplicity of suits he can then, and on that ground successfully ask for the injunction he now seeks.

*Order affirmed.*

(Decided 10th December, 1885.)

ROBINSON, J., dissented.