JESSIE SMITH *vs.* IRA BRADLEY.

Suffolk. March 27, 1891. — June 27, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Deed — Building Restriction — " Equidistant."*

Restrictions in a deed, requiring that all buildings erected on the land shall be "placed equidistant from, and at the distance of not less than eight feet back from the street," and " shall have no L more than two stories in height," are not violated by the erection of a building four stories high without an L, the front line or wall of which is placed nine and a half feet back from the street, except a bay window projecting therefrom, which extends out to the eight-foot line.

BILL IN EQUITY, filed in the Superior Court, to enforce the restrictions in a deed. The case was heard by *Dewey*, J., who reported it for the determination of this court, in substance as follows.

The plaintiff was the owner of four lots of land, and the defendant the owner of a single lot, on Westminster Street in Boston, extending back eighty-five feet therefrom, being a part of nine lots situated on that street between Williams Street and Sterling Street. They both derived title from the Tremont Improvement Company, the former owner of the entire nine lots, which conveyed them all by deeds containing the following restrictions: " The premises are sold subject to the restrictions, that the front line of all buildings thereon shall be placed equi-

distant from, and at the distance of not less than eight feet back from the street; that no building thereon shall be of less width in front than twenty feet; that the main part of such buildings shall be not less than two stories in height, exclusive of the basement and attic ; that they shall have no L more than two stories in height ; that such buildings shall be of brick, stone, or iron, and shall be used for dwelling-houses solely, or such public buildings as shall be approved by the mayor and aldermen." Each deed also contained a reservation of a right of private passageway over the rear of the lot thereby conveyed. The defendant's lot was upon the corner of Westminster Street and Williams Street. A predecessor in title of the plaintiff, who owned all the other eight lots, built a brick block of eight houses upon them, each two stories high, with a marble front placed eight feet back from Westminster Street. Each house was about forty feet deep and was built without an L, and the land in the rear of each was used as a yard. This block was built upon insecure foundations and the houses settled and moved therefrom irregularly, so as to cause a change in the front line of the houses. One of the plaintiff's houses adjoining the defendant's lot at the front corner nearest that lot was nine and six tenths feet back from the street, and at the farthest front corner nine and twenty-eight one-hundredths feet back from it. Another house of the plaintiff's on the second lot from the defendant's lot was also more than eight feet back from Westminster Street. To the ordinary observer, however, the whole block of houses appeared to be on a line with and equidistant from the street. Prior to the filing of the plaintiff's bill, the defendant had begun to lay the foundation of a building upon his lot, which had previously been unoccupied. He proposed to build a substantial structure of brick, four stories high, including the story in the French roof, fronting upon and having its entrance upon Williams Street, with a bay window on Westminster Street extending from the ground to the top of the building, commencing near the corner at Williams Street. The proposed building was to be constructed without an L, but was to be one building of uniform height, covering substantially the whole of his lot, except eight feet on Westminster Street, and the space of ten feet on the rear end of the lot reserved

for a passageway. The line of the building, except the bay window, was to be not less than nine and a half feet back from Westminster Street, and substantially the same distance from that street as the front line of the plaintiff's dwelling-house on the adjoining lot. The greatest width of the bay window was to be eleven and a half feet, and its greatest depth one and a half feet, so that no part of the wall of the building, including the bay window, was to be nearer than eight feet to Westminster Street. The building was to be divided into suites or apartments, and was to be occupied as a dwelling-house.

The judge found that the defendant's building, if erected as proposed, would injure the plaintiff's adjacent houses, especially in excluding light and air, by reason of being built so high and extending at the same height over nearly the whole lot.

*W. C. Williamson*, for the plaintiff.

*J. F. Wiggin*, for the defendant.

MORTON, J. The defendant does not contend that the premises belonging to him are not subject to the restrictions contained in the original deed given by the Tremont Improvement Company, which originally owned these premises and those adjoining, or that the plaintiff is not a party entitled to relief upon a case being made of an actual or threatened violation of them by the defendant. He insists that the building which he is proposing to erect will not, if erected as he proposes to build it, constitute in any respect a breach of any of those restrictions.

The plaintiff contends that the term "equidistant," in the restriction that "all buildings . . . shall be placed equidistant from, and at the distance of not less than eight feet back from the street," requires the defendant to put the front of his building back to the uniform line of the fronts of the adjoining houses already erected. But it is clear that the line thus fixed must be a line of apparent rather than actual uniformity; and there is nothing in the case to show that the building of the defendant will, if erected as proposed, disturb this apparent uniformity of line. It will be impossible to make the front line or wall of the defendant's building exactly equidistant from the street with that of the other buildings, for these are not equidistant with each other; even the front corners of the plaintiff's own dwelling are not

equidistant from the street. Moreover, it would be unreasonable, when the other buildings were all intended, as the court has found, to be eight feet back from the street, and are now somewhat more than that distance, through causes due to the imperfect manner in which they were constructed, to require the defendant to conform his building to the accidental line thus established, and which the owners of the other buildings might rectify and would have the right to rectify. It would be giving the other landowners an easement in the land of the defendant in a manner never contemplated by the original deed, and we do not think that the term " equidistant " can be so construed. If it were necessary for us to define it, we would sooner incline to think it was used more in the sense of parallel. It would be highly probable that, under a restriction requiring the front line of buildings to be not less than eight feet from the street, all buildings would be set back eight feet and no more. In that case, if the word equidistant is construed as meaning that all buildings shall be the same distance from the street, it would add no power to the requirement that they should be eight feet back from the street. If, however, it should be construed in the sense of parallel, then, in addition to the uniformity produced by buildings placed the same distance from the street would be the unformity produced by their being placed in a line with the street. Again, if any other line than a line eight feet from the street is to be adopted, how is it to be fixed? We think, therefore, that the defendant has a right to build out to the eight-foot line, and that there is nothing in the proposed construction of his building that will violate this restriction.

The plaintiff further contends, that the restriction which requires that "they [the buildings] shall have no L more than two stories in height," will be violated by the erection of the building intended by the defendant. We do not think that this restriction means that no building shall be erected unless it has an L, or without an L, but that if any building is erected with an L it shall not exceed two stories in height. Parties are left to build with or without an L, as they choose. It is stated in the defendant's brief, that in fact not one of the buildings which have been erected has an L. Parties are also left to build over their entire lots if they choose, leaving

only the space of eight feet in front and ten feet in the rear, and the only restriction as to the height to which a building may be carried is that which relates to an L.   Restrictions of the character of those which we are considering are to be interpreted fairly and reasonably, and according to the apparent purpose of protection or advantage to the several estates which they are intended to secure or promote.  *Whitney* v. *Union Railway*, 11 Gray, 359.  *Jeffries* v. *Jeffries*, 117 Mass. 184, 189.  *Sanborn* v. *Rice*, 129 Mass. 387, 396.   While they are not to be narrowly construed, they are not to be unduly enlarged.   The original grantor saw fit to insert in the deeds which it gave a restriction that only dwelling-houses should be built on these lots.   The court have found that the building which the defendant proposes to erect will be a dwelling-house.   It is possible that, if the original grantor had anticipated the erection of a building like that which the defendant is about to put up, it would have inserted in its deeds some restriction to meet it.   It is also possible that it did anticipate it, and that the restrictions which the deed contains embody all that the original grantor thought it wise to insert.   Taking the deed as it stands, we do not see anything in it which should lead us to the conclusion that the defendant will violate any restriction, express or implied, in regard to the building of an L, in the proposed manner of constructing his building.                                   *Bill dismissed.*