THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY AND LEAVENWORTH, NORTHERN & SOUTHERN
RAILWAY COMPANY v. OTTO MEYER.

No. 11,829.    (64 Pac. 597.)

RAILROADS—*Right of Way—Injunction.* Where a railway com-
pany is seeking, by building a new and permanent bridge or
making a permanent and safe road-bed, to make its track safe for
public travel, it will not be prohibited from so doing at the in-
stance of one injured thereby, when such injury is comparatively
small and may be easily ascertained and compensated for in
money.

Error from Leavenworth district court; L. A. My-
ERS, judge. Opinion filed April 6, 1901. *In banc.*
Reversed.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plain-
tiffs in error.

*L. B. Wheat,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Some time about 1886, the de-
fendant the Leavenworth, Northern & Southern Rail-
way Company constructed a line of railroad across
a section of land belonging to the defendant in
error, running in a general direction from north to
south. It crossed a natural watercourse known as
Wolf creek. In crossing this creek a Howe truss
bridge was built some sixty or seventy feet in length,
which was placed on pile piers and had pile or trestle
approaches for some distance at either end. Faulty
proceedings in condemnation having been had, the
defendant in error brought suit for damages occasioned
by the building of such road, in which he was allowed
for the land taken and for the damages to the land

not taken. The Atchison, Topeka & Santa Fe Railway Company is now operating said line of road.

In 1897 the plaintiff in error, for the purpose of permanently improving this road-bed at the crossing of the creek, constructed two stone abutments of solid masonry and replaced the wooden bridge with an iron-girder bridge. The waterway between the stone abutments was considerably smaller than that between the pile supports and approaches of the old bridge, but was much greater than that required for the discharge of the ordinary flow of water, and indeed, except in the highest stages of water, it would not obstruct the flow. The railway company was proceeding to fill up the space at the south end of the new bridge with a solid bank of earth, for the purpose of making the road-bed more permanent and safe. Up to this time the defendant in error had had an under-grade passageway for his stock through the space occupied by the south pile approach. This under-grade passage would be destroyed by the fill proposed by the railway company.

Wolf creek entered the land of defendant in error across its north line and pursued a southeasterly direction to the bridge in question. On the southwest side of the creek the bank was a bluff over which the water would never flow. On the northeast side of the creek, the banks were from three to seven feet high, and the land had been cultivated well down to the edge of these banks. In very high stages of water, both before and after the building of the railroad bridge, the water would rise above these banks and overflow, to a greater or less extent, the land to the northeast. There are about four acres in the angle between the railroad, the north line of plaintiff's land, and Wolf creek. A portion of this, about one and

one-half acres, was liable to be overflowed by the increased high water caused by making the proposed fill of earth south of the south abutment. These waters would, however, soon run down, being rapidly discharged through the waterway under the bridge, remaining upon the land of the defendant in error comparatively a short time.

This action was brought by the defendant in error for the purpose of obtaining a permanent injunction against the plaintiffs in error, prohibiting them from making this earth fill south of the south abutment, alleging as reasons therefor that he would be deprived of the subway as a passage for his stock from one portion of his land to the other, and that, in times of extraordinary high water, the four-acre tract of land hereinbefore spoken of would be flooded to a greater extent than theretofore.

The railway companies answered that they had acquired a right to construct, operate and maintain their line of railroad in such manner as properly to perform their duties to the public and to the state of Kansas, and that, for the proper maintenance and operation of the railroad, it was necessary to replace the temporary structure, built of piling at the time said road was constructed upon the premises described in plaintiff's petition, with a permanent bridge of stone abutments, in order to make such road safe, and that the construction of the bridge and stone abutments would in no manner interfere with the rights or privileges of the plaintiff.

It appeared upon the trial that the defendant in error had two over-grade crossings, and that, except for a few hours when the water was high, his cattle could pass under the new bridge between the stone abutments. But he contended that the space occupied

by the trestlework south of the south abutment was open at the time he obtained his verdict in his action for damages caused by the construction of the railroad, and that he was awarded damages only for such injuries as he had suffered up to that time, and, hence, never having been paid for the injuries which would come to him by reason of being deprived of this subway, he was entitled to have it kept open.  On the other hand, the plaintiffs in error contend that the issues, evidence and instructions of the court in the action for damages were such that it must now be presumed that he was awarded damages compensating him for being deprived of said subway.  The court is of the opinion that this view is correct and if for no other reason than this, the defendant in error cannot maintain his action on this branch of the case.

We think that the entire contention of the defendant in error is without equity.  This trestlework with its wooden bridge was but a temporary structure, and, as is well known, not so permanent, safe and desirable as a road-bed as the permanent improvement which plaintiffs in error were erecting.  Such temporary structure would be kept up with greater expense to the railway company, and would expose the traveling public to greater danger.  To shut up this open space by earth filling would discommode the defendant in error but little, for, as has been stated, except for a few hours at rare intervals, he has his subway a few feet to the north, and at the time of these few hours he has two over-grade crossings near by.  Not to shut it up by such earth filling means constant danger to the traveling public and expense to the railway company ; and, to some extent at least, it would prevent the railway company from fulfilling its duty to the traveling public.  The advantage to Meyer in having

this space left open in no sense corresponds to the inconvenience and injury to the traveling public and the railway company resultant therefrom.

Now, as to the extent of his right to the injunction because of the increased overflow of his land. As has already been seen, the entire piece of land is about four acres, and of this only about one and one-half acres would be affected at all by the water made higher by the proposed fill, and this only at rare intervals and for a short period of time. It is impossible in the nature of things that much, if any, damage could result to the defendant in error, and, if damages should so result, they are easily measured by a money consideration, and in no sense can be great or irreparable.

"In our judgment such occasional overflow of a few acres of land, part of a farm of more than 100 acres, does not work a destruction of the inheritance, or justify the granting of an injunction in order to prevent irreparable mischief." (*Blaine v. Brady*, 64 Md. 377, 1 Atl. 609.)

We do not think that the defendant in error has shown himself entitled to the interference of a court of equity to prevent the small damage, if any, he might sustain. We do not understand that injunction may be used as an instrument to annoy or harass any one in the prosecution of a legitimate enterprise, and, especially so, if any damage which might result therefrom can be easily measured and be compensated for in dollars and cents, and the defendant is able to respond in damages.

Our conclusion is that the contention of the defendant in error is without merit, and, therefore, the judgment of the court below will be reversed, with instructions to deny the injunction.