# MARTIN L. MAIN

## vs.

## THE MAYOR AND COUNCIL OF HAGERSTOWN, HARRY F. McGLORY, MARKET INSPECTOR.

*Municipalities: powers of sale by—; covenants, lights and right of way.   Trespass to real estate: injunction to restrain; material injury.*

A legislative grant of a power of sale to a municipality carries with it a grant of power to transfer an interest less than absolute.                                                  p. 339

A covenant in a deed to the effect that the "grantors and their successors will secure to the grantee, his heirs and assigns, all the benefits and advantages of the light of the doors and windows in the building which the grantee had erected on a portion of the lot conveyed," is in effect an easement of light, and does not convey a right of way.                     p. 338

In a bill to enjoin a trespass in real estate, while it is not necessary that irreparable injury should be in terms alleged in the bill, there should appear in the bill such facts as make it apparent that the damage complained of will be irreparable, going to the destruction of the estate of the plaintiff in the manner in which he has been accustomed to enjoy it.     p. 340

In order to authorize an injunction against interfering with ancient lights, there must be that sort of material injury to the comfort and existence of those who dwell in the neighboring house which requires the power to prevent as well as remedy the evil.                                              p. 341

*Decided February 27th, 1918.*

Appeal from the Circuit Court for Washington County (In Equity).  (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*J. A. Mason* (with whom was *Levin Stonebraker* on the brief), for the appellant.

*Alex. R. Hagner,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Acting under the authority granted by the Act of 1813, Chapter 121, the Moderator and Commissioners of Hagerstown acquired a lot in that town upon which to erect a Market House.  It developed that the land purchased was more than was required for the purposes of the market, and by the Act of 1821-22, Chapter 66, legislative authority was given to the officials of Hagerstown to sell a portion of the ground so acquired.  Thus authorized, they sold to George Brumbaugh the eastern half of the lot.  In the deed conveying the property to Mr. Brumbaugh, there was included a covenant reading as follows:

> "And the said Moderator and Commissioners for themselves and their successors in the office further covenant, grant, promise and agree to and with the said George Brumbaugh, his heirs and assigns, that they the said Moderator and Commissioners and their successors will secure to the said George Brumbaugh, his heirs and assigns, all the benefits and advantages of the light of the doors and windows in the brick buildings which the said George Brumbaugh has erected on the portion of the lot or parcel of ground hereby bargained and sold and which are on that side of said buildings which adjoins the said market space.  And

the said Moderator and Commissioners for themselves and their successors further covenant, grant, promise and agree to and with the said George Brumbaugh, his heirs and assigns that no house, building, edifice or superstructure of any description whatever shall be erected on the market space aforesaid within ten feet of the houses which have been erected by the said George Brumbaugh on the portion of the aforesaid lot of ground hereby bargained and sold to the aforesaid George Brumbaugh.  And that the said space of ten feet shall be forever kept open and clear and free from all obstructions for the better securing to the said George Brumbaugh, his heirs and assigns, the benefits and advantages of the light to the aforesaid doors and windows."

It will be observed that the effect of this covenant was to grant to Brumbaugh, his heirs and assigns, an easement of light on the west in favor of the building which might be erected by him.  It did not include an easement of air or a right of way.

Upon the remaining portion of the lot, the Hagerstown officials erected a market house, and left open a space of ten feet between the lot conveyed to Brumbaugh, and the east side of the market house.

The easement granted by the deed mentioned has been a source of litigation, the latest phase of which is the present bill of complaint.

In 1875 a proceeding was had in the Circuit Court for Washington County by which the assignee of Mr. Brumbaugh sought to establish an easement to a right of way over the ten-foot space, but failed to do so, and the bill then filed by Mr. Kauffman was dismissed by JUDGE ALVEY, sitting in that Court, and no appeal was taken from his decree.  In that case, as in this, the town officers apparently placed some reliance upon the ground that the grant of the easement was an *ultra vires* act.  So far as this case is concerned, the same

contention, again set up by the defendant, might well be regarded as *res adjudicata,* but that does not seem necessary in the establishment of the defendant's case, and the ground assumed by the Judge from whose decree the present appeal is taken is clearly sound. That ground is, that a grant of power of sale necessarily carries with it a grant of power to transfer an interest less than an absolute one. The Act of 1821 left to the discretion of the Moderator and Commissioners the amount of the lot acquired which should be sold, and it was clearly within their power to grant an easement appurtenant to the portion which they did in fact sell.

The bill filed in the present case recites that Martin L. Main, by virtue of sundry *mense,* conveyances, became the assignee of the lot sold to Brumbaugh. It recites the covenants in the deed already quoted; complains that the Mayor and Council of Hagerstown have caused to be placed in the ten-foot open space certain "trestles, timber, boards and structures of wood and other articles" used by those attending the market. The bill then charges that the articles mentioned are obstructions upon the ten feet, and constitute a breach of the covenant, and closes with the following prayers:

"(*a*) That the defendants, their servants and agents and all persons acting by their authority, may be enjoined and prohibited from causing or permitting the articles mentioned in the fifth and sixth paragraphs of this Bill of Complaint to be placed or stored upon the open space mentioned in said Bill of Complaint.

("*b*) That a mandatory injunction be issued by this Honorable Court requiring the defendants, their servants and agents and all persons acting by their authority, to remove or cause to be removed from said open space the articles mentioned in the said fifth and sixth paragraphs of this Bill of Complaint."

These recitals have been made in some detail for the reason that it is nowhere alleged or suggested in the bill, that the light of the building belonging to Mr. Main has been inter-

fered with, nor that the injury suffered by him is irreparable, and the testimony in the case shows rather that what the plaintiff is seeking is to establish his right to an easement of right of way over the ten-foot space, than a question of light, or of light and air.

It is not necessary in a case of this sort that irreparable injury should in terms be alleged, but it is necessary that there should appear in the bill such facts as make it apparent to the Court that the damage will be irreparable, going to the destruction of the estate of the plaintiff in the manner in which he has been accustomed to enjoy it. *Baugher* v. *Crane,* 27 Md. 36; *Gilbert* v. *Arnold,* 30 Md. 29; *Davis* v. *Reed,* 14 Md. 152; *Blaine* v. *Brady,* 64 Md. 373.

The cases in which an injunction have been granted are such cases as *Dudley* v. *Hurst,* 67 Md. 44, in which the owner of a farm having a large canning establishment thereon, was held entitled to an injunction to prevent the removal of the machinery, the deprivation of which would destroy his canning business. *Scully* v. *Rose,* 61 Md. 408, where an injunction was granted to restrain the removal of ore from an ore bank, on the ground of the permanent injury to the property; and *Douglass* v. *Riggin,* 123 Md. 18, which arose over the right of way in an alley, that the defendant was repaving in a manner to effectually prevent the plaintiff's use of the same in the manner in which she had been accustomed to use it.

It is always to be borne in mind in considering this case, that the only subject with which it is concerned is a question of light. The bill makes no reference whatever to the light, but it does appear in the testimony of the case and is the one grant mentioned in the covenant.

In the *Attorney General* v. *Nichol,* 16 Ves. 342, LORD ELDON says: "There is little doubt that courts will not interpose upon every degree of darkening ancient lights in windows; there are many obvious cases of new buildings darkening those opposite them, but not in such a degree that an injunction could be maintained."

The rule thus laid down was followed in England in such cases as *Wynstanley* v. *Lee,* 2nd Swanson, 336, and *Sutton* v. LORD MONTFORD, 4 Sim. 559. In *VanBergen* v. *VanBergen,* (3 Johns, Ch. Rep. 282), CHANCELLOR KENT held that to justify the granting of an injunction there must be "that sort of material injury to the comfort and existence of those who dwell in the neighboring house which requires the power to prevent as well as remedy the evil."

The English rule was early followed in this country in *Wilson* v. *Cohen,* Rice's Equity (S. C.), 80, and in numerous cases since that time.

It does not affirmatively appear in these cases that there was a covenant distinctly relied upon, and the existence of such covenant is urged by the plaintiff in the present case as conclusive of the rights of the parties.

There are two clearly defined lines of cases in this country where a covenant is involved. In Massachusetts there are several cases which hold that if there be a covenant, that fact alone is determinative of the question. A typical case of this character is the case of *Brown* v. *O'Brien,* 168 Mass. 484; and less strongly, but still tending in the same direction, *Lattimer* v. *Livermore,* 72 N. Y. 181.

The other line is, that the interference with the light, even in cases of a covenant, must be such as to inflict some material injury upon the enjoyment of the property.

In *Hagerty* v. *Lee,* 45 N. J. Eq. 1, there had been the reservation in a deed of light and air to the plaintiff, and it was held that if it had been made to appear that the interference with the plaintiff's windows would result in his substantial loss of light and air, he would have been entitled to an injunction, but as that condition of affairs did not appear, and as his right under the reservation to maintain windows overlooking these lands, which were not necessary for light and air, had at the time not been settled at law, the injunction which had previously been granted should be dissolved.

In *Clawson* v. *Primrose,* 4 Del. Ch. 643, it was said: "A Court of Equity will restrain the obstruction of light by the erection of adjoining buildings, only when the privation of light and air by a proposed erection will be in such degree as to render the occupation of the complainant's house uncomfortable, if it be a dwelling house, or if it be a place of business, materially less beneficial than it had formerly been."

The case of *Hennen* v. *DeVeney,* 77 S. E. 142, was decided by a divided Court. In that case a lot had been conveyed for church purposes, with a covenant that no building should be erected within ten feet. The church passed to commercial uses. The majority opinion says that—"The rule is well established that if the covenant benefits the land to which it relates, and enhances its value, the easement created by it becomes appurtenant to the land and passes with it," and it cites in support of this conclusion the cases of *Salisbury* v. *Andrews,* 128 Mass. 336; *Phoenix Ins. Co.* v. *Continental Ins. Co.,* 87 N. Y. 400; *Brew* v. *Van Deman,* 53 Tenn. 433, and *Herrick* v. *Marshall,* 66 Me. 435.

As a deduction from all the cases, the general rule is laid down as follows in 14 *Cyc.* 1218: "Equity will enjoin any obstruction of an easement of light and air which will materially impair the complainant's enjoyment of his property, or which is in violation of a covenant in the deed by which he holds. Where plaintiff fails to show that he will suffer a substantial deprivation of light or air by the threatened obstruction, the injunction should be denied."

The reasons for this rule are well stated in *Lattimer* v. *Livermore,* 72 N. Y. 181, in which case there was a covenant for light and air, and the Court said: "If this covenant had ceased to be of any substantial value to the plaintiff she would not be permitted in equity to enforce it simply to annoy and damage other people, but so long as this covenant remains of substantial value to her, and she has in no way extinguished or released her easement she must be permitted to enforce it."

This would appear to be the reasonable rule to follow to prevent a hold-up.

What are the facts as they appear in the present case? The plaintiff has six windows and a door on the first floor of his west wall, and the same number of windows on his second and third floors, and one small window opening into the basement. The exhibits filed in the case do not show that the open space between the market house and Mr. Main's warehouse is of attractive appearance, or has been beautified to any large extent by the town authorities of Hagerstown. But the question is, whether the *light* of the plaintiff has been obstructed so as to materially interfere with the light in the plaintiff's warehouse. The exhibits while they show planks and boards resting against the warehouse occupied by the plaintiff, do not show them as resting against his windows, or being such as would diminish the illumination of his place.

It is in evidence that two of the windows have been partially and permanently closed up on the inside by the plaintiff; that as to the other four there are curtains which can be raised or lowered, and that against some of the windows the furniture in the premises of the plaintiff is regularly backed up. This interference with the light by the act of the plaintiff, or the plaintiff's tenant, is much more serious than the temporary placing against his wall of trestles, tables, planks or other paraphernalia connected with the market, and these market appurtenances are not permanent in their character, but liable to be moved at any time for their use in connection with the market.

The remaining window, the small window in the basement, it is testified, and not contradicted, has been at times filled up by putting a box into the opening on the inside, by the tenant, the effect of which is to deprive the plaintiff's basement of a greater amount of light than any interference therewith on the part of the defendant, and these facts all taken together emphasize the limitation upon the right under the

covenant for light, that the deprivation must be of such a character as to render the premises materially less available for beneficial use than they had formerly been.

The further fact that these proceedings were instituted without notice to the Mayor and Council of Hagerstown to remove the alleged obstructions, together with the entire absence from the bill of any allegations of an interference with the light of the plaintiff, all tend to the conclusion that there has not been any such deprivation as to materially affect the plaintiff, or the plaintiff's tenant, in their use of the building. If such a case had been made out, it would have been a proper one under the covenant of the deed for interference by a Court of Equity; but the proof in this case, and the allegations of the bill, are not sufficient for the granting of the relief prayer.

The decree below will accordingly be affirmed, and bill dismissed.

*Decree affirmed and bill dismissed, with costs.*