EDWARD C. JACKSON, APPELLEE, V. BOARD OF SUPER-
VISORS OF WASHINGTON CO. ET AL, APPELLANTS.

[FILED MAY 18, 1892.]

1. **Statutes.** The act approved February 18, 1867, entitled "An act
to provide for the payment of judgments against municipal cor-
porations," article VI, chapter 77, Compiled Statutes, entitled
"Revenue," is not repealed by the provisions of section 77 of
the general revenue law.

2. ————: CONSTRUCTION. It is an established rule of construction
that a subsequent statute treating of a subject in general terms
and not expressly contradicting the provisions of a prior act,
shall not be construed as intended to affect the more particular
and positive provisions of a prior act, if any other reasonable
construction can be adopted.

3. ————: LEGISLATIVE CONSTRUCTION of a statutory or constitu-
tional provision, although not conclusive upon the courts, when
deliberately made, is entitled to great weight.

4. **Taxation:** LEVY. By provisions of section 77 of the general rev-
enue law it is made the duty of the county board on the last day
of the session of the board of equalization to levy taxes sufficient
to provide the ordinary revenue of the county and to meet ma-
turing obligations as bonds, coupons, outstanding warrants, etc.,
and probably judgments existing and unprovided for. In case
judgments are subsequently rendered it is made the duty of the
board by article VI, chapter 77, Compiled Statutes, to provide
funds therefor by levying a special tax.

APPEAL from the district court for Washington county.
Heard below before SCOTT, J.

*W. C. Walton,* and *Lake, Hamilton & Maxwell,* for ap-
pellants, cited: *State, ex rel. Baldwin, v. McColl,* 9 Neb.,
203; *State v. Babcock,* 21 Id., 602; *Hendrix v. Rieman,*
6 Id., 516; *McCann v. McLennan,* 2 Id., 286; *Lawson v.
Gibson,* 18 Id., 137.

*E. C. Jackson, contra.*

Post, J.

This action was commenced in the district court of Washington county by the appellee Jackson to enjoin the appellants, the board of commissioners and county clerk of said county, from making the necessary tax lists on a four mill levy upon the property of the county for the purpose of paying a balance due on a judgment against said county. The facts disclosed by the petition are substantially as follows: On the 15th day of December, 1891, J. H. Harte, as receiver of Richards & Co., recovered a judgment against Washington county in the sum of $8,057.18, as a balance due to said Richards & Co. for building the court house for said county.    Towards the satisfaction of this judgment ·the county, by its supervisors, immediately applied all of its available funds, whereby the judgment was reduced to the sum of $5,797.02, which amount, together with the accruing interest, and the costs of the action in which the judgment was obtained, remained to be provided for by said supervisors.    On making payment, as aforesaid, on said judgment, the said supervisors being then in session, said J. H. Harte, receiver, made a formal demand upon them that they proceed at once to make a special levy of taxes to pay the balance thereof.    Thereupon the said board of supervisors, having first officially determined that the amount of revenue derived from taxes levied and collected for ordinary purposes was insufficient to meet and pay the current expenses of the county for the year 1891, and also to pay what remained unsatisfied of said judgment, proceeded under article VI of chapter 77 of the Compiled Statutes of 1891 to make a four mill levy upon the taxable property of the county for that particular use.    It is the perfecting and enforcement of this levy that the plaintiff sought to have enjoined and which the decree of the court appealed from does in terms enjoin.

A demurrer to this petition was overruled, and the de-

fendants below electing to stand on their demurrer, judgment was entered in accordance with the prayer of the petition, from which judgment the defendants have appealed to this court.

Article VI of the revenue law is an act of the twelfth session of the territorial legislature, entitled "An act to provide for the payment of judgments against municipal corporations," which took effect February 18, 1867. The act contains five sections, as follows:

"Section 1. [Duty of officers.]—That whenever any judgment shall be obtained in any court of competent jurisdiction in this territory for the payment of a sum of money against any county, township, school district, road district, town or city board of education, or against any municipal corporation, or when any such judgment has been recovered and now remains unpaid, it shall be the duty of the county commissioners, school district, board of education, city council, or other corporate officers, as the case may require, to make provisions for the prompt payment of the same.

"Sec. 2. [Same—Payment—Tax.]—If the amount of revenue derived from taxes levied and collected for ordinary purposes shall be insufficient to meet and pay the current expenses for the year in which the levy is made, and also to pay the judgment remaining unpaid, it shall be the duty of the proper officers of the corporation, against which any such judgments shall have been obtained and remaining unsatisfied, to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments.

"Sec. 3. [Levy of tax.]—The tax shall be levied upon all the taxable property in the district, county, township, town or city, bound by the judgment, and shall be collected in the same manner and at the same time provided by law for the collection of other taxes.

"Sec. 4. [Same.]—The corporate officers whose duty it

is to levy and collect taxes for the payment of the current expenses of any such corporation, against which a judgment may be so obtained, shall also be required to levy and collect the special tax herein provided for, for the payment of judgments.

"Sec. 5. [Action against officers—Mandamus.]—If any such corporate authorities, whose duty it is, under the provisions of this act, to so levy and collect the tax necessary to pay off any such judgment, shall fail, refuse, or neglect to make provisions for the immediate payment of such judgments, after request made by the owner, or any person having an interest therein, such officers shall become personally liable to pay such judgments, and the party or parties in[terested] may have an action against such defaulting officers to recover the money due on the judgment, or he or they having such interest may apply to the district court of the county in which the judgment is obtained, or to the judge thereof in vacation, for a writ of mandamus to compel the proper officers to proceed to collect the necessary amount of money to pay off such indebtedness, as provided in this act; and when a proper showing is made by the applicant for said writ, it shall be the duty of the court or judge, as the case may be, to grant and issue the writ to the delinquents, and the proceedings to be had in the premises, shall conform to the rules and practice of said court, and the laws of this territory, in such cases made and provided."

The contention of appellee is that this act is in effect repealed by implication by provisions of the general revenue law. The provision of the revenue law which is claimed to be in conflict with the act in question is section 77 thereof. By said section it is provided as follows:

"Sec. 77. [Levy of taxes for county purposes—Rate.]— On the last day of their sitting as a board of eqalization the county board shall levy the necessary taxes for the current year, including all county, township, city, school dis-

trict, precinct, village, and other taxes required by law to be certified to the county clerk and levied by the county board. The rate of tax for county purposes shall not exceed one dollar and fifty cents on the one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of the present constitution, unless authorized by a vote of the people of the county, and shall be as follows: In counties under township organization, for ordinary county revenue, including the support of the poor (except when each town supports its own poor), not more than nine mills on the dollar valuation; for roads, not more than five mills on the dollar valuation; for county bridge fund, not more than four mills on the dollar valuation; for county sinking fund, not more than four mills on the dollar valuation, and labor tax as provided in the following section. In counties not under township organization, for ordinary county revenue (including the support of the poor), not more than nine mills on the dollar valuation; for roads, not more than five mills on the dollar valuation; for county bridge fund, not more than four mills on the dollar valuation; for county sinking fund, not more than three mills on the dollar valuation, and labor tax as provided in the following section."

It will be observed that the board of equalization are, by provision of section 70, required to hold a session commencing on the first Tuesday after the second Monday in June of not less than three and not more than thirty days. It is also provided by section 25, chapter 18, Compiled Statutes, that the county commissioners, at their regular session in January of each year, shall prepare an estimate of the necessary expenses of the county for the ensuing year, the total of which shall in no instance exceed the amount of taxes authorized to be levied for such year, and that "no levy of taxes shall be made for any other purpose or amount than as specified in such estimate," etc. It is alleged in the petition that the estimate made in January,

1891, of the expenses of the county for that year did not include any provision for payment of any judgments against the county. It is not alleged that the board failed to make provision for the payment of the indebtedness of which the judgment is evidence. It is probable that the petition is vulnerable for that reason, but the case has been submitted on its merits, and we will proceed to consider the substantial questions presented.

It is claimed that the provision found in section 77 for the levy of the county taxes for the current year, on the last day of the sitting of the board of equalization, is exclusive and that there is no authority for the levy of a county tax at any other time. This proposition suggests an examination of the history of that provision. Our first general revenue law was passed and took effect February 13, 1857, section 32 of which was as follows: "On the fourth Monday of July the county court shall levy the requisite taxes for the then current year, and they may be levied at any time after the second Monday of July if the statement has been received from the census board." (Laws of 1857, p. 154.) This section appears in the Revised Statutes of 1866, p. 312, having been amended so as to provide for the levy on the first instead of the fourth Monday, and by the county commissioners instead of the county court. It was further amended by addition thereto of the following: "If the statement from the territorial board of equalization has not been received such levy shall not be postponed for more than ten days, and they shall levy taxes as herein directed." It will be seen from an analysis of the above sections that the provision relied upon, substantially as it exists to-day, has been in force since 1857, since the effect of repealing and re-enacting the revenue law of 1866 in substance is to continue in force its several provisions. (*State v. McCall,* 9 Neb., 203.) It will surely not be contended that the requirement of the Revised Statutes for the making of the levy within ten

days after the first Monday of July is less imperative than
the provision that it shall be done on the last day of the
sitting of the board of equalization.   The statute under
which the county board acted in levying the tax in contro-
versy is the more recent, and therefore must be taken as
the latest expression of the legislative will.   One of the
elementary rules of construction is that a later special stat-
ute will prevail as against a prior general law, where the
provisions of the two cannot be reconciled.   But let us
examine the present law without reference to the reve-
nue laws of 1857 or 1866.   We will assume, as do coun-
sel, that in 1879 the legislature passed a general law for
the levy and collection of taxes without expressly repealing
the act, making provision for collecting revenue to satisfy
judgments by means of a special levy.   The rule is that
repeals by implication are not favored, and when acts upon
the same subject can be harmonized by a fair and liberal
construction, it will be done.   (Sedgwick on Construction,
98; *Lawson v. Gibson*, 18 Neb., 137; *State v. Babcock*, 21
Id., 599.)   And this rule has especial application to cases
where the subsequent statute treats of a subject in general
terms but not expressly contradicting the more particular
and positive provision with reference to the same subject
in a prior act. (*Fosdick v. Village of Perrysburg*, 14 O. St.,
486; *Brown v. Co. Com.*, 21 Pa. St., 43.)   In *State v.
Dwyer*, 42 N. J. Law, 327, the court says:   "Where a
general law and a special statute come in conflict the gen-
eral law yields to the special without regard to priority of
date, and a special law will not be repealed by a general
statute unless by express words or necessary implications."

Applying these rules of construction to the statutory
provisions in question, it is possible to give effect to each.
Section 77 of the revenue law has reference to all ordinary
revenues of the county or other corporations, and all ma-
turing obligations on bonds, coupons, outstanding warrants,
etc., and probably judgments existing and unprovided for

at the time of the levy.    But in case of judgments subsequently rendered, or for which no provision has been made, by requirement of article 6 the county board are bound to raise the necessary revenue by means of a special levy. The evident object of that statute is to provide for and enforce a speedier satisfaction of money judgments against municipal corporations than would be possible should the creditor who had incurred the expense of reducing his claim to judgment be required to wait until the succeeding January in order to have it included in the estimate of expenses and levied and collected as the ordinary revenues. The provision of section 25, chapter 18, is found in the act of 1879, entitled "An act concerning counties and county officers."    Like the revenue law, it is a general law and clearly within the rule above stated, hence cannot be held to work a repeal of the act known as article 6, even if its title was broad enough to include a repeal by implication of that act, which we doubt.    In addition to what has been said with reference to the statute under consideration, it should be observed that there have been repeated legislative constructions thereof in harmony with the views herein expressed.    By an act approved January 18, 1872, Guy A. Brown was appointed a commissioner with authority to revise and compile all the general laws of the state, putting them together under appropriate heads and chapters.    By section 3 of said act it is made the duty of said commissioner to carefully note any conflict which he may discover in the laws, or between the laws and the provisions of the constitution, and embody them in a report which he was required to make accompanying his revision to the next legislature.    By a subsequent act, approved February 18, 1873, the legislature provided for the publication of all of the general laws in force at the close of that session, to be edited by said Brown.    It is provided in section 2 of said act "that he (Brown) shall prepare suitable head notes of the several chapters and divisions as provided in the act ap-

pointing said commissioner." In conformity with this act the revision known as the General Statutes was published. In that compilation the act of February 18, 1867, providing for the payment of judgments against municipal corporations, is included as part of chapter 66, under the title "Revenue." By an act of the first legislature after the passage of the present revenue law, approved February 26, 1881, Guy A. Brown was authorized to compile the public acts then in force, putting them into chapters with appropriate heads, and title, etc. Under this authority the Compiled Statutes were published, which, together with subsequent editions in 1885, 1887, and 1889, were furnished by the state to the several public officers. In this compilation the territorial act in question appears as article 6, being a part of chapter 77. It also appears as sections 4112 to 4116 inclusive of the Consolidated Statutes compiled by J. E. Cobbey by authority of the state in 1891. Legislative construction, although not necessarily conclusive upon the judicial department of the government, is entitled to great weight when deliberately given. (Bishop on Written Laws, 35; Sedgwick on Construction, 214; *Coutant v. People*, 11 Wend. [N. Y.], 511.) There being no necesessary conflict between the statutes under consideration, it follows that the appellants did not exceed their authority in making the special levy for the purpose of satisfying the judgment against the county. The judgment of the district court is

REVERSED.

THE other judges concur.