PANTORIUM, APPELLANT, V. HARRY J. MCLAUGHLIN ET AL., APPELLEES: NICHOLAS OIL CORPORATION, APPELLANT.

FILED OCTOBER 21, 1927. No. 25860.

*Crossman, Munger & Barton,* for appellants.

*O. S. Spillman, Attorney General, T. J. McGuire, John P. Breen, Henry J. Beal, Monsky, Katleman & Grodinsky* and *W. H. Herdman, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

The final order here appealed from denied a permanent injunction to prevent the further imposition and collection of the tax of two cents a gallon provided by law upon motor vehicle fuels and imposed and collected upon a certain product known as a dry cleaner's solvent and used for cleaning clothing and other fabrics.

The suit was brought by plaintiff, for itself and for all others similarly situated, against executive officers charged with the collection and enforcement of the tax and against three typical oil companies as dealers within the law and engaged in distributing and selling petroleum products including dry cleaner's solvent, sometimes termed "standard dry cleaner's naptha" or "Stoddard solvent." Nicholas Oil Corporation, one of the defendants, filed a separate answer and cross-petition, taking substantially the same position as a dealer that plaintiff did as a large user of the product. These two parties are appellants. The others are appellees. The appellants, by appropriate allegations, challenged the tax on the ground that the solvents so taxed are not produced, distributed, sold or used for the purpose of operating motor vehicles as contemplated by the law, nor adaptable thereto.

Upon a full hearing, the trial court in a decree found "that the cleaner's naptha and cleaner's solvent is a volatile oil which 'may be used for operating or propelling mo-

tor vehicles,' and is not among the enumerated ones exempted from the tax, and that the statute fairly means and applies to all such oils not exempted as possibly can and might be used for the purpose named," and the court dismissed with prejudice the petitions of the appellants. This particular finding (defining the meaning of "may be used") and order constitute the sole error relied upon by the appellants.

In 1925 the legislature passed, and there was duly approved, the act, a part of which is now before us for interpretation. Laws 1925, ch. 172. The act defined dealers as those who import into the state, or who produce, refine, manufacture or compound motor vehicle fuel, any part of which is for use, distribution, sale or delivery in the state. It required appropriate accounting, inspection and monthly reports and required monthly payments by the dealer at the rate of two cents a gallon to the secretary of the department of agriculture, to be paid over by him to the state treasurer and placed by that officer in a fund to be known as the gasoline highway fund. After paying administrative sums appropriated, the balance is each month transferred to the department of public works, for the improvement, including construction and maintenance, of the state and federal highway system under the provisions of certain laws previously passed and approved. Section 1 of the act contained the following definitions:

" 'Motor vehicles' are hereby defined and include all automotive or self-propelled vehicles, engines or machines, movable or immovable, which are operated or propelled in whole or in part by internal combustion of one or more of the 'motor vehicle fuels' defined herein.

" 'Motor vehicle fuels' are hereby defined and shall include such fuels known as gasoline, naptha, benzine, benzol and such other volatile and inflammable liquid as may be produced or compounded for the purpose of, or as may be used for, operating or propelling motor vehicles except the product commonly known as kerosene oil, kerosene distillate, crude petroleum, residuum, gas oil or smudge oil."

The purpose of the act is to raise money to construct and maintain highways. Direct taxation upon the lands affected being undesirable as a means of raising the necessary revenue, the method of charging a tax upon personal property that might be used in the enjoyment of the highway, so constructed and maintained, was resorted to. This power was delegated by the people to the legislature by section 1, art. VIII of the 1920 Constitution of Nebraska. The tax is an excise tax. 2 Cooley, Constitutional Limitations (8th ed.) p. 988; *Flint v. Stone Tracy Co.*, 220 U. S. 108.

The sole question to be decided is the meaning of the word "may" in the act, as used in its setting in the definition of motor vehicle fuel, and as applied to the solvents used in their art by cleaners. Shortly stated, the appellants contend that the phrase "as may be used for" was intended by the legislature, and should be understood and interpreted, to mean the same as the phrase "is used for;" while appellees insist, and the trial court in substance found, that "may" there means "can" or "might." The dictionaries give the following definitions of "may:" Funk & Wagnalls New Standard Dictionary: "4. To have power or ability; be competent; used in this sense with the meaning *can,* a word frequently substituted." Webster's New International Dictionary: "As auxiliary followed by the infinitive without *to,* qualifying the sense of another verb by adding that of: Ability; competency; now oftener expressed by *can.*"

It is a general rule that the intention of the legislature to tax a particular item of personal property must be carried forward into language which can be reasonably construed to effect that purpose. Otherwise the intention cannot be enforced by the courts. The provisions of such acts will not be extended by implication so as to include such property in an excise law. *Smietanka v. First Trust & Savings Bank,* 257 U. S. 602. Another general rule that must also be considered is that the courts should take words in their ordinary grammatical sense unless such a construc-

tion would obviously be repugnant to the intention of the legislature or would lead to some other inconvenience or absurdity. Sedgwick, Construction of Statutory and Constitutional Law (2d ed.) 220. Mr. Justice Brewer, writing the opinion for the court in Treat v. White, 181 U. S. 264, quoted that rule with approval, held that the language of the statute was clear, and applied the tax to an item found by the court to come within the definition of the terms of the statute because not exempted by the letter or spirit of the statute and because commonly and legally within the meaning of the statute.

The evidence shows that the solvents used by cleaners are not used generally, if at all, in motor vehicles; their cost is somewhat greater than that of gasoline; the advantage of their use is found in the greater safety to those using them, and in the lessened property hazard from explosions and from fire.

It is not necessary nor desirable to recite with extended detail the interesting testimony of the chemists showing the qualities of the various liquids involved in the evidence. It is sufficient to record that these solvents can be used as motor vehicle fuels just as kerosene can be so used, by employing gasoline as a starter of the motor and then by switching to the other fuel. In the present state of the art of their production, the objections to the use of these solvents as a fuel are the cost, the inconvenience of combining the use with that of gasoline, the resulting carbon deposit, and perhaps also the lesser power produced.

In the statute, gasoline, naptha, benzine and benzol were definitely classified as motor vehicle fuels; kerosene oil, kerosene distillate, crude petroleum, residuum, gas oil or smudge oil were referred to as fuels and were expressly excepted from the list of fuels to be included as motor fuels; and any other fuel, if a volatile and inflammable liquid, and if produced or compounded for the purpose of, or if it may be used for, operating or propelling motor vehicles, was classified as a motor vehicle fuel. If all the liquids excepted in the definition could, like kerosene, be used in en-

gines, then the definition might furnish some special and internal aid to determine the meaning of the legislature in the matter under consideration. But while kerosene has been used and can be used as a motor vehicle fuel, crude petroleum, residuum, gas oil and smudge oil cannot be so used. The testimony shows that these cleaner's solvents were not produced and put on the market until January, 1925. The act of the legislature taxing motor vehicle fuels was approved March 31, 1925. There is nothing to show whether they were on the market here at that time. Even if the legislature knew of these solvents and of their usable qualities as motor vehicle fuels and could have exempted them from the tax as they exempted kerosene oil, it is sufficient to say that they did not list them among the exceptions. "It is well settled that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted and excludes all other exceptions." 25 R. C. L. 983, sec. 230. The cleaner's solvents are inflammable liquids and under the facts are capable, under conditions heretofore named, of being used for the purpose of operating or propelling motor vehicles.

In passing, it may be of value to call attention to certain questions submitted by the house of representatives to the supreme judicial court of Maine, and to the opinion of the justices in answer thereto, relating to a tax on all gasoline and other internal combustion fuel, except kerosene, sold within the state. The answer stated comprehensively that such an excise tax was legal; and in answer as to a certain inquiry respecting exemptions, the opinion says:

"But in our view of the nature of the tax, the use to which the gasoline or other fuel may be put by the purchaser is not a factor in the problem; whether upon land or water, the highway or the farm is entirely beside the question." *In re Opinion of the Justices*, 123 Me. 573, 581.

So, we are thrown back upon the natural meaning of the words used by the legislature in our search for the proper interpretation of the words "as may be used." To find this authoritative meaning, we rely on the current dictionaries.

The natural meaning of the word "may" as used in the act under consideration is that of power, of ability, of competency. It is used in this sense with the meaning of "can" and the latter word is frequently substituted for it. And so, when the legislature passed the act listing as taxable "such other volatile and inflammable liquids * * * as may be used for operating or propelling motor vehicles," and did not include cleaner's solvents among the exceptions, we are of the opinion that these solvents should be classified among the taxable fuels for the reason that they are capable of use or can be used in operating such vehicles. If the legislature had intended to exempt these products, theoretically and legally at least it would have done so. This seems plain to us, and as a coordinate branch of the state government we cannot, under the guise of statutory interpretation, legislate for it. If this interpretation work a hardship or be considered erroneous, the next or any succeeding legislature will have the power to amend the statute.

For the reasons set forth, the judgment of the district court is

AFFIRMED.