ARTHUR J. RICHARDSON ET AL., APPELLANTS, V. JAMES N. KILDOW ET AL., APPELLEES.

FILED MARCH 14, 1928. No. 25505.

*Hainer, Flansburg & Lee* and *W. L. Kirkpatrick*, for appellants.

*John L. Riddell, George M. Spurlock* and *Benton Perry, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, THOMPSON and HOWELL, JJ., and REDICK, District Judge.

REDICK, District Judge.

This action is brought by the plaintiff and others, as taxpayers of York county, against the board of supervisors and the treasurer of York county, to enjoin the county officers named from carrying out a plan of establishing and maintaining a county fair, and to enjoin the collection of taxes and the expenditure of moneys for such purpose. The district court found the fair itself was legally established, enjoined certain tax levies, and enjoined the county from expending money for the erection of certain buildings, but refused to enjoin a levy of taxes for the maintenance and management of a county fair. Plaintiffs appeal.

A general statement of the facts will not be necessary, but attention will be called, as we proceed, to those which are pertinent to the questions submitted.

Those questions are: (1) Whether or not the county of York has adopted, in the manner provided by statute, what is known as the county fair act; and (2) whether or not any or all of the taxes levied by the county in pursuance of the establishment of a county fair should be enjoined. The determination of these questions depends upon a proper construction of certain sections of the Compiled Statutes of 1922, the pertinent portions of which are as follows: "Section 57. Counties in the state of Nebraska are hereby authorized to establish and maintain county fairs, to purchase, hold and improve real estate for that purpose, to convey the same, to levy and collect taxes for such purposes, and to do all things necessary for the proper management of such county fairs."

"Section 58. (1) Any county may proceed under this act when such county shall have accepted the provisions hereof, which acceptance may be made by the county commissioners or board of supervisors by resolution duly adopted.

"(2) If after the adoption of a resolution for such purpose fifteen per cent. of the qualified voters of the county shall file with the county board a petition requesting that the acceptance of the provisions of this act shall be submitted to the voters of the county, the county board shall submit the same to a vote of the people in like manner as the question of voting courthouse bonds may be submitted. During the time such question is pending for the vote of the people no further proceedings shall be had for the establishment of such fair.

"(3) Whenever ten per cent. of the qualified voters of the county shall file a petition with the county board asking that the question of the acceptance of the provisions of this act be submitted to a vote of the. people it shall be the duty of such board to submit such question to the voters in like manner as the question of voting courthouse bonds

may be submitted. If a majority of the votes cast upon the question, when the same is submitted under either of the provisions hereinbefore provided, shall be for such proposition the county board shall immediately proceed to establish such county fair."

The above section is not subdivided, but we have quoted it in that form for purposes of clarity.

"Section 59. Any county acting under the provisions of this act shall have authority to purchase, hold, improve and convey real estate for county fair purposes in like manner as other real estate for county purposes."

"Section 60. Bonds may be voted, or a special tax be levied, for the purchase and improvement of real estate for county fair purposes in like manner as for the building of a courthouse in any county accepting the provisions of this act."

The above sections are taken from the session laws of 1917, "An act to authorize counties in the state of Nebraska to establish and maintain a county fair, to purchase, hold and improve real estate for that purpose, to convey the same, and to levy and collect taxes for such purpose."

Section 58, *supra,* provides for the submission of the question of establishing county fairs to the voters "in like manner as the question of voting courthouse bonds may be submitted," and thereby the sections governing that procedure become a part of the county fair act. Those sections are the following:

"Section 854. It shall be the duty of the county board of each county: * * * Second. To erect or otherwise provide a suitable courthouse, jail and other necessary county buildings, and for that purpose to borrow money and issue the bonds of the county to pay the same. * * * But no appropriation exceeding fifteen hundred dollars shall be made for the erection of any county building except as hereinafter provided, without first submitting the proposition to a vote of the people of the county at a general election or a special election ordered by said board for that

purpose, and the same is ordered by a majority of the legal voters thereon."

"Section 856. The mode of submitting questions to the people for any purpose authorized by law shall be as follows: The whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect, or having operation, if it be of a nature to be set forth, and the penalty of its violation, if there be one, is to be published for four weeks in some newspaper published in the county."

"Section 857. When the question submitted involves the borrowing or expenditure of money, or issuance of bonds, the proposition of the question must be accompanied by a provision to levy a tax annually for the payment of interest, if any thereof, and no vote adopting the question proposed shall be valid unless it likewise adopt the amount of tax to be levied to meet the liability incurred."

It will be noted that by section 58 two methods are provided by which the county may accept the provisions of the county fair act: (1) By a resolution adopted by the county board, subject, however, to being overturned by referendum upon a petition to that end signed by fifteen per cent. of the qualified voters of the county; or (2) by submission of the question to a vote of the county upon a petition signed by ten per cent. of the qualified voters. Either of these submissions to be made in like manner as provided for the issue of courthouse bonds.

January 9, 1924, a resolution to accept the provisions of the county fair act was voted down by the board of supervisors. On September 23, 1924, petitions containing the requisite number of signers were presented to the county board asking the submission to the people at the general election in November of the question of the acceptance of the county fair act and the establishment of a county fair. The petition was accepted by the board and the county clerk instructed to place the proposal on the ballot, which was done in the usual manner, and notice of a general

election to be held November 4, 1924, was given for filling certain offices, and also "purchase site and maintain a county fair." This was the only notice published concerning the acceptance of the county fair act, and was published once, on the 10th day of October, 1924.

In the absence of the adoption of a resolution by the board accepting the provisions of that act, it is perfectly clear, and the record so establishes, that the board was proceeding under the second method above referred to for the determination of the question. It is equally clear that the steps taken were ineffective because of a failure to publish, for four weeks, notice of the election, including the sum desired to be raised, or the amount of tax desired to be levied, and other matters as required by section 856.

It is argued by defendants that, inasmuch as the county board was authorized by resolutions alone to accept the provisions of the act, and that, as appears from the evidence, subsequent to the election, the board carried many motions and resolutions for the purpose of establishing and maintaining a county fair, the absence of a preliminary resolution is thereby supplied and the consent of the county sufficiently established. We cannot adopt this view. Counsel fail to consider that, after the adoption of the resolution by the board, an opportunity must be afforded the electors to present the matter by a referendum to the people. This is not so important, as the board adopted the second method after the defeat of the resolution of January 9, 1924. The statute requires affirmative action by one or other of the methods provided. When the statute provides the manner in which the consent of the county to be governed by the act is to be manifested, such method must be pursued. In *State v. Cherry County*, 58 Neb. 734, we held that the statutes requiring notice to be published four weeks prior to submitting a question for the issuance of courthouse bonds was jurisdictional. And in *State v. Babcock*, 21 Neb. 599, we held that the requirement of the adoption of the amount of tax to be levied was mandatory. The submission to the electors in the present instance was

insufficient for failure to publish notice for four weeks, and for failure to state the amount desired to be levied, for adoption by the people. We are clearly of the opinion that the county has failed to take the necessary steps to acquire the authority to maintain a county fair.

The second question for our consideration arises from the following facts: After the election, and November 26, 1924, the board of supervisors, assuming they had the authority, advertised for proposals for land for a county fair site, and in response thereto the board was offered the Bittinger farm of eighty acres, accepted the offer, and on January 24, 1925, purchased the farm for $25,355, and paid for the same in cash out of the general fund, which had been replenished by a transfer from several other funds. Payment was made in the form of warrants which were immediately redeemed and are now held in the general fund until the amount taken therefrom is restored by taxation.

January 13, 1925, the board passed a resolution authorizing the sale of the poor farm of the county, and the question of sale was later submitted to the voters and authorized. It seems that the intent of the board was to hook up the two propositions and use the land purchased for the county fair also as a poor farm. The poor farm has not yet been sold.

In 1925 the county board included in its estimate of expenses $40,000 for "county fair ground" and levied a tax for the same. The district court enjoined the collection of this tax in excess of the cost of the Bittinger farm, $25,355. Plaintiffs claim this entire levy was void and should be enjoined. We think, however, the holding of the district court was correct. It will be noted that the authority of the county board to purchase sites for county buildings is without restriction. There is no requirement that the question be submitted to the people. And while, if the transaction stood alone, in view of our holding that the county had no authority to establish and maintain a county fair, the purchase and the levy of this tax would

be held void, we think, in view of the proposed sale of the county poor farm and the transfer of that institution to the new ground, it presents a situation with which a court of equity should not interfere. The interests of the plaintiffs as taxpayers are not of sufficient magnitude to outweigh the loss and serious complications which would surely result to the county from a different holding, especially in view of the fact that the board was acting in good faith and, so far as the record shows, received full value for that portion of the tax held valid by the lower court. The writ of injunction is not wholly a writ of right. *Atchison, T. & S. F. R. Co. v. Meyer,* 62 Kan. 696. And it may be withheld if it is likely to inflict greater injury than the grievance complained of. *Edwards v. Allouez Mining Co.,* 38 Mich. 46. The interests of the public are to be taken into consideration by the court, and when the issuance of an injunction will cause serious public inconvenience or loss, without correspondingly great advantage to the complainant, no injunction will be granted. 22 Cy. 784.

In 1926 the county fair board, appointed by the county board, as required by the statute, presented its estimate of expense for the management of the county fair for that year in the sum of $15,000. The county board accepted the estimate, but included in its own estimate for 1926 an item of $30,000 for county fair purposes and for the improvement of the county fair premises by the erection and construction of buildings thereon; the intention being, it seems, that $15,000 should be raised for the expense of managing the fair, and $15,000 for the erection of necessary buildings. The district court enjoined the levy to the extent of $15,000 for the erection of buildings, but approved the remainder for the management of the county fair. In this we think the learned judge erred. His ruling was correct enjoining the levy for buildings, but he should also have enjoined the levy for expense of management for the reason, as we hold, that the county of York was not authorized according to law to carry on a county

fair and, therefore, the county board was without authority to levy taxes for that purpose.

It follows that the judgment of the district court must be reversed in so far as it decrees that York county is authorized to establish and maintain a county fair, and in so far as it failed to enjoin the collection of the entire $30,000 levy for county fair purposes in 1926, and the cause is remanded, with instructions to grant the injunction in in that regard as prayed. In all other respects the judgment is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART, WITH DIRECTIONS.