PETER S. PETERSON, APPELLANT, V. DEPARTMENT OF PUBLIC
WORKS ET AL., APPELLEES.

FILED JANUARY 7, 1931. No. 27472.

*Gaines, McGilton, Van Orsdel & Gaines* and *William C.
Ramsey,* for appellant.

*C. A. Sorensen, Attorney General,* and *L. Ross Newkirk,
contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON,
EBERLY and DAY, JJ.

GOOD, J.

Plaintiff brought this action, seeking a decree enjoin-
ing state officials from interfering with him in the oper-
ation of his motor truck over the highways of the state
of Nebraska. A general demurrer to the petition was
sustained. Plaintiff refused to further plead. Judgment
of dismissal followed. Plaintiff appeals.

In his petition plaintiff alleges that he is a resident of
Underwood, Iowa, the owner of a motor truck bearing Iowa
license No. T F 35, used for the transportation of live stock,
and that he is chiefly engaged in the transporting of live
stock from the vicinity of Underwood, Iowa, to the stock-
yards in Omaha, Nebraska; that he holds a license giving
him a permit to drive said truck on the public roads and
highways of said state; that defendants have threatened to

have him arrested, should he fail to take out a license in the state of Nebraska and thereby obtain a permit in the state to operate his said truck upon the public highways of this state. He alleges that the state is attempting to levy an unjust tax upon the property of the citizens of another state coming into this state, and that the proposed collection of a license fee, or automobile tax, is unreasonable, unjust and contrary to the terms of the commerce clause of the Constitution of the United States.

The principal question for determination is the validity of the Nebraska statute imposing upon owners of automobiles and trucks the obligation of obtaining a license or permit to operate their motor vehicles over the highways of this state, and requiring the payment of the fee provided by the statute.

Nebraska, like most of her sister states, has adopted a rather comprehensive motor vehicle law. Experience has taught the necessity of regulating motor traffic over the state highways. It has provided for registration of all motor vehicles, the obtaining from designated officials certificates showing the owner's right to operate the vehicle over the highways; provided for the display of registration numbers on each vehicle, and regulating the speed and use of motor vehicles on the highways. The state is now, and for some years past has been, engaged in improving highways by paving and hard-surfacing them for the use by owners of such means of transportation. It is expending several millions of dollars annually in such work. The law provides for registration fees for the owners of automobiles and of motor vehicles, graduated according to carrying capacity or weight. A small part of this fee, so charged, is used for the administration of the law. The remainder of it is used exclusively to aid in improving and maintaining hard-surfaced highways. The amount of these fees forms only a small part of the total expended by the state in improving and maintaining its highways.

We deem it necessary to quote only such provisions of the law as have been attacked in this action. Section 60-302, Comp. St. 1929, in part, provides: "Every owner of a mo-

tor vehicle shall, for each motor vehicle owned, except as herein otherwise expressly provided, make application for registration on a blank to be furnished for that purpose by the county treasurer of the county of (in) which the owner resides, or if such owner is not a resident of this state, such application for registration may be made to the county treasurer of any county. (Then follows the information which must be contained in the application.) Provided, the provisions of the act relative to registration and the display of registration numbers shall not be construed to apply to any motor vehicles owned by a nonresident of this state, if the owner thereof shall have complied with the provisions of the law of the state of which he is a resident, relative to the registration thereof and the display of registration number plates thereon, and shall conspicuously display his registration number plates as required by the law of this state. The provisions of this section, however, as to the exemption from registration of such nonresident owners shall apply only to the extent that under the laws of the state of his residence like exemption and privileges are granted to motor vehicles, * * * trucks, and motor busses, duly registered under the laws of and owned by residents of this state. A nonresident, within the meaning of the provisions of this chapter, shall be held and defined to mean a person residing in another state, territory or district, and temporarily residing or sojourning within this state for a period of sixty (60) days, or less, in any one year. Provided, further, that none of the exemptions from the requirements of registration shall apply to commercial motor trucks or motor busses."

Section 60-314, Comp. St. 1929, provides the scale of registration fees. For ordinary automobiles the fee ranges from $8 to $12 per annum; and "for motor vehicles equipped to carry more than seven persons the fee shall be twenty-five ($25) dollars plus seven dollars ($7) additional for each person which said car is equipped to carry." It is further provided that motor vehicles engaged entirely in the transportation of passengers for hire shall be subject to the same rates provided for trucks. The registration

fee on trucks is as follows: "On all trucks on which the advertised carrying capacity shall not exceed two thousand (2,000) pounds, eight dollars ($8). On all trucks on which the advertised carry (carrying) capacity is more than two thousand (2,000) pounds but does not exceed three thousand (3,000) pounds, twelve dollars ($12). On all trucks on which the advertised carrying capacity is more than three thousand (3,000) pounds but does not exceed four thousand (4,000) pounds, eighteen dollars ($18). On all trucks on which the advertised carrying capacity is more than four thousand (4,000) pounds but does not exceed five thousand (5,000) pounds, the fee shall be twenty-five dollars ($25). On all trucks on which the advertised carrying capacity is more than five thousand (5,000) pounds, the fee shall be twenty-five dollars ($25) plus ten dollars ($10) for each thousand (1,000) pounds, or fraction thereof, by which the advertised carrying capacity exceeds five thousand (5,000) pounds."

There are other provisions of the statute making it a misdemeanor for one to operate a motor vehicle over the highways of the state without complying with the laws as to registration. We assume that it is the threatened arrest of the plaintiff for noncompliance with the registration laws of the state that is sought to be enjoined.

If the statute does not violate the commerce clause of the federal Constitution, then the demurrer to the petition was rightfully sustained. It is conceded that at this time congress has not occupied the field of regulating interstate traffic by motor vehicles operated over public highways, and, in the absence of such legislation, the state may enact reasonable regulations, provided it does not burden interstate commerce in their enforcement.

The precise question has not heretofore arisen in this state, so far as we are advised. Similar questions under similar statutes, have arisen in a number of the sister states, and have reached the supreme court of the United States for decision. Its interpretation of such laws is controlling.

Plaintiff cites and relies upon a number of decisions of the United States supreme court, involving the question of an occupation tax levied against telegraph, telephone and express companies, engaged in interstate commerce. We do not regard these cases as controlling, since there are other decisions of that court, relating to the exaction of registration fees for motor vehicles under statutes similar to the ones involved in this action.

In *Hendrick v. Maryland*, 235 U. S. 610, the validity of a Maryland statute, providing for registration of motor vehicles operated upon the highways of that state, was involved, and wherein the fees were graduated according to the horse-power of the motors. In the opinion it was said (p. 622) : "In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles— those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. The reasonableness of the state's action is always subject to inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of congress. * * *

"The prescribed regulations upon their face do not appear to be either unnecessary or unreasonable.

"In view of the many decisions of this court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed

according to some uniform, fair and practical standard they constitute no burden on interstate commerce. *Transportation Co. v. Parkersburg*, 107 U. S. 691, 699; *Huse v. Glover*, 119 U. S. 543, 548, 549; *Monongahela Navigation Co. v. United States*, 148 U. S. 312, 329, 330; *Minnesota Rate Cases*, 230 U. S. 352, 405; and authorities cited. The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable.

"There is no solid foundation for the claim that the statute directly interferes with the rights of citizens of the United States to pass through the state, and is consequently bad according to the doctrine announced in *Crandall v. Nevada*, 6 Wall. 35. In that case a direct tax was laid upon the passenger for the privilege of leaving the state; while here the statute at most attempts to regulate the operation of dangerous machines on the highways and to charge for the use of valuable facilities.

"As the capacity of the machine owned by plaintiff in error does not appear, he cannot complain of discrimination because fees are imposed according to engine power. Distinctions amongst motor machines and between them and other vehicles may be proper—essential indeed—and those now challenged are not obviously arbitrary or oppressive. The statute is not a mere revenue measure and a discussion of the classifications permissible under such an act would not be pertinent."

In *Kane v. New Jersey*, 242 U. S. 160, the court had under consideration the validity of the New Jersey motor vehicle law, and in that case it expressly approved the holding in *Hendrick v. Maryland, supra.* In the course of the opinion it was said (p. 168) : "The amount of the fee is not so large as to be unreasonable; and it is clearly within the discretion of the state to determine whether the compensation for the use of its highways by automobiles shall be

determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise. * * *

"In the *Hendrick* case it did not appear, as here, that the fees collected under the motor vehicle law exceeded the amount required to defray the expense of maintaining the regulation and inspection department. But the Maryland statute, like that of New Jersey, contemplated that there would be such excess and provided that it should be applied to the maintenance of improved roads. And it was expressly recognized that the purpose of the Maryland law 'was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.' "

In *Clark v. Poor*, 274 U. S. 554, the court had under consideration the validity of the Ohio motor vehicle law. In the opinion it was said (p. 556): "The plaintiffs claim that, as applied to them, the act violates the commerce clause of the federal Constitution. They insist that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the state; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under section 614-94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. *Morris v. Duby*, 274 U. S. 135; *Hess v. Pawloski*, 274 U. S. 352. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. *Hendrick v.*

*Maryland,* 235 U. S. 610; *Kane v. New Jersey,* 242 U. S. 160. Compare *Packard v. Banton,* 264 U. S. 140, 144."

Again, in *Interstate Busses Corporation v. Blodgett,* 276 U. S. 245, the court held: "A state tax of one cent for each mile of highway traversed in the state by any motor bus used in interstate commerce, the proceeds of which are devoted to maintenance of public highways of the state, is not repugnant to the commerce clause of the Constitution, when not unreasonable in amount or discriminatory against interstate commerce." Other decisions of the United States supreme court holding to a like tenor are *Michigan Public Utilities Commission v. Duke,* 266 U. S. 570; *Buck v. Kuykendall,* 267 U. S. 307; and to like effect is the holding in *American Motor Coach System v. City of Philadelphia,* 28 Fed. (2d) 736.

Under the principles announced in these cases we think the law of Nebraska cannot be said to violate the commerce clause of the federal Constitution. There is nothing to indicate that the amount of the fees charged is exorbitant or unduly burdensome; or that it amounts to more than a fair compensation for the use of the facilities afforded those operating motor vehicles over the state's highways.

One other matter remains to be considered. The state legislature designated the registration fee as an occupation tax. This was a misnomer. The fact that the legislature called it an occupation tax does not, in fact, make it such; and, in truth, it is not an occupation tax but is purely a registration fee and exacted for the purpose of paying the expense of administering the law, and for the improvement and maintenance of the highways, and for no other purpose. It is not, in any sense, a general revenue measure. The legislative misnomer does not affect the validity of the act.

Plaintiff's petition does not state facts entitling him to the demanded relief. The judgment of the district court is therefore right, and it is

AFFIRMED.