ROCKY MOUNTAIN LINES, INC., ET AL., APPELLEES, V. ROBERT L. COCHRAN, GOVERNOR, ET AL., APPELLANTS.

299 N. W. 596

FILED AUGUST 1, 1941.   No. 31179.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck,* for appellants.

*Ginsburg & Ginsburg, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an action under the declaratory judgments act to secure a determination as to the rights, status and relations of the parties under Legislative Bill No. 148 of the 1939 legislative session of the state of Nebraska. Laws 1939, ch. 80. From a decision adjudging the legislation invalid, the defendants appeal.

The plaintiff, Rocky Mountain Lines, Incorporated, is, and at all times mentioned in the amended and supplemental petition was, a corporation duly organized and existing under the laws of the state of Nebraska, with its principal place of business in the city of Lincoln, Nebraska, and is now, and ever since its organization has been, engaged in the business of transporting and carrying property for hire as a common carrier by motor vehicle between points and places in the states of Illinois, Kansas, Iowa,

Missouri, Colorado, Wyoming and Nebraska, over regular and irregular routes within the scope of the authority and order of the interstate commerce commission of the United States. L. L. Nicolay, also a plaintiff herein, is the executive vice-president and general manager of the plaintiff corporation and appears herein in his official capacity only in its behalf.

As preliminary to stating the issues presented in this case, it may be said that this state is now, and for some years past has been, engaged in improving highways by paving and hard-surfacing, as well as discharging the burden of continuous maintenance and repair thereof largely for the use of owners of motor transportation. It expends several millions of dollars annually in such work. The two sources of state taxation from which the necessary public funds are derived to carry on this work are, first, the law which provides for registration of motor vehicles with fees therefor graduated according to carrying capacity and weight. A small part of this fee so charged is used for the administration of the law. The larger part of it is used exclusively to aid in improving and maintaining hard-surfaced highways. The total amount of these fees deducted for enforcement purposes constitutes an exceedingly small part of the total expended by the state in improving and maintaining its highways. This tax was upheld by this court in *Peterson v. Department of Public Works,* 120 Neb. 517, 234 N. W. 95, both as to interstate and intrastate commerce.

The second source of state tax revenue is the law which provides for the motor vehicle fuel tax, which is commonly referred to as the "gasoline tax." As descriptive of this tax, Goss, C. J., employed the following language, which in the main is equally applicable to the present enactment: "The purpose of the act is to raise money to construct and maintain highways. Direct taxation upon the lands affected being undesirable as a means of raising the necessary revenue, the method of charging a tax upon personal property that might be used in the enjoyment of the high-

way, so constructed and maintained, was resorted to. This power was delegated by the people to the legislature by section 1, art. VIII of the 1920 Constitution of Nebraska. The tax is an excise tax. 2 Cooley, Constitutional Limitations (8th ed.) p. 998; *Flint v. Stone Tracy Co.*, 220 U. S. 107." *Pantorium v. McLaughlin*, 116 Neb. 61, 215 N. W. 798.

Both of these statutory provisions are equally applicable to the users of Nebraska highways, whether engaged in intrastate or interstate transportation. In April, 1939, the plaintiff corporation purchased three Diesel motors which were placed in its units 22, 42 and 43. These motors are mounted, one on a Federal chassis, two mounted on Diamond-T chassis. Unit 22 has a 13-ton license; 42 is licensed at 10 tons; and 43 was licensed for 10 tons. These licenses were secured from the state of Nebraska and thereby the Nebraska motor registration act was fully complied with. Under the laws of Nebraska at this time (April, 1939) there was no tax provided for Diesel fuel employed on these Diesel motors as motive power. Diesel fuel was not embraced in the terms of the tax definition of motor fuel as defined by our tax statute. Nevertheless, the trucks were placed in service, competing with gasoline-propelled motor vehicles from which there was being exacted a tax of 5 cents a gallon on the gasoline consumed by them. The undisputed evidence is that the cost of Diesel fuel oil used by plaintiff is about 9 cents a gallon, and that the truck mileage obtained therefrom, as measured by their unit 43, is nine miles a gallon. The nearest comparable unit employing gasoline possessed by the plaintiff was its unit 35 which is propelled by a gasoline motor. This unit employed gasoline as a fuel, for which they paid 13 cents a gallon, 5 cents of which was ultimately received by the state. The mileage obtained by this unit 35 on gasoline so employed was from six to seven miles a gallon. Both interstate and intrastate commerce are here involved, and the facts, if limited to the question of motor fuel oil, evidence a service discriminatory to interests which are entitled to an equality

of treatment at the hands of the state of Nebraska. It is, in principle, not an unimportant question here presented. As observed by this court in *Nelsen v. Tilley*, 137 Neb. 327, 289 N. W. 388: "It cannot be seriously disputed that the motor vehicle industry has grown to huge proportions in both the state and nation. Motor vehicles, once luxuries, are now necessities." A well-considered public policy demands that that which constitutes a present necessity in the ordinary affairs of the people should not be legislatively discriminated against so as to unjustly affect those to which it pertains. To meet this situation, and to preserve a just equality among the users of our highways, there was enacted in 1939 Legislative Bill No. 148, entitled, "An Act relating to motor vehicles; to impose equalization fees upon said motor vehicles, as defined by the laws of this state operating on the public highways therein, propelled by any motor burning fuel not subject to the motor vehicle tax laws of this state; to fix and determine the amount of such equalization fees for the various types of motor vehicles; to provide for the amount, method of payment, collection and distribution of said fees; to direct the department of roads and irrigation to design a license plate to identify said vehicles; and to provide penalties for the violation thereof." Laws 1939, ch. 80. This act was approved, without an emergency clause, on June 8, 1939. The substance of this enactment so far as involved in the present controversy is, as follows: "The owner of any motor vehicle as defined by the laws of the state of Nebraska, or agent of the owner, operating such motor vehicle on the public highways of this state, propelled by any motor, burning fuel not subject to the motor vehicle fuel tax laws of this state, shall be required to pay an annual equalization fee to be paid in quarterly payments, in lieu of the motor vehicle fuel tax, in addition to the registration and license fees applicable to such vehicle, as follows: For a farm, local or commercial truck, as defined by the laws of this state, or a bus, the equalization fee shall be a sum equal to twice the amount of the registration fee applicable to

such vehicle under the laws of this state: Provided, however, that no undue burden shall be imposed upon interstate commerce; and any such vehicle, registered under the laws of any other state and not registered in this state shall have the right, in lieu of the payment of the quarterly equalization fee, to pay an amount equal to one per cent. of the annual equalization fee, which would be applicable hereunder to such vehicle if it were registered in this state, for each day that such motor vehicle is operated in this state * * *."

Under the flat rate as prescribed by this law, there was exacted as an excise tax for the use of the highways of Nebraska, $400 on unit 42, $400 on unit 43, and $520 on unit 22, a total of $1,320.

The appellees challenge the validity of Legislative Bill No. 148 as infringing upon and transgressing federal safeguards and constitutional restrictions, in that it amounts to a tax imposed by a state upon interstate commerce or the means by which interstate commerce is carried on; that this bill makes for an unfair classification and does not operate uniformly upon all members of the class by it created; that it cannot be sustained as an equalization tax; and that exactions of taxes made thereunder bear no relation to the extent and manner of the use of the highway to be made by the interstate carrier. A careful consideration of the admitted facts and law relating thereto will demonstrate that the real scope of these objections under the situation here presented is materially narrowed.

As before stated, the Rocky Mountain Lines is incorporated under the laws of the state of Nebraska, with its principal place of business at Lincoln, Nebraska, where it maintains its docks, home offices, shop and terminal for the trucks. It carries on a transportation business as common carrier of commodities, operating generally in Illinois, Iowa, Missouri, Nebraska, Kansas, Colorado and Wyoming. Its equipment includes 42 units, of which 20 are motors and 22 are trailers. Seventeen of these motors employ gasoline in generating power. The remaining three are

Diesel motors, upon which an excise tax for use of highways was imposed, as already set forth. The validity of the motor vehicle laws of Nebraska are unchallenged so far as the 17 gasoline motors are concerned, and as to the three Diesel motors only so far as the provisions of Legislative Bill No. 148 are here involved.

"It is no longer open to question that the states have constitutional authority to exact reasonable fees for the use of their highways by vehicles moving interstate. *Hendrick v. Maryland*, 235 U. S. 610; *Kane v. New Jersey*, 242 U. S. 160; *Clark v. Poor*, 274 U. S. 554; *Sprout v. South Bend*, 277 U. S. 163; *Morf v. Bingaman*, 298 U. S. 407; *Dixie Ohio Express Co. v. State Revenue Commission*, 306 U. S. 72." *Clark v. Paul Gray, Inc.*, 306 U. S. 583, 593, 59 S. Ct. 744, 750.

As to the validity of the class created by the terms of Legislative Bill No. 148, Laws 1939, ch. 80, which it describes as "any motor, burning fuel not subject to the motor vehicle fuel tax laws of this state, shall be required to pay an annual equalization fee," etc. It may be said it is a, conceded principle that "The classification of the traffic for the purposes of regulation and fixing fees is a legislative, not a judicial, function. Its merits are not to be weighed in the judicial balance and the classification rejected merely because the weight of the evidence in court appears to favor a different standard. *Cf. Worcester County Trust Co. v. Riley*, 302 U. S. 292, 299. The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility. *Standard Oil Co. v. Marysville*, 279 U. S. 582, 584; *Borden's Farm Products Co. v. Ten Eyck*, 297 U. S. 251, 263; s. c. 11 Fed. Supp. 599, 600; *South Carolina Highway Department v. Barnwell Bros.*, 303 U. S. 177, 191-192; *United States v. Carolene Products Co.*, 304 U. S. 144, 153-154. Hence, in passing on the validity of the present classification, it is not the province of a court to hear and examine evidence for the purpose of deciding again a question which the legislature

has already decided. Its function is only to determine whether it is possible to say that the legislative decision is without rational basis. This is equally the case where the classification, which is one which the legislature was competent to make, is applied to vehicles using the state highways in interstate commerce. *South Carolina Highway Department v. Barnwell Bros., supra,* 187 *et seq.* The legislature must be assumed to have acted on information available to courts * * *." *Clark v. Paul Gray, Inc.,* 306 U. S. 583, 594, 59 S. Ct. 744, 750.

It is to be remembered that the law under consideration is not the equivalent of an income tax levy, but rather it is the fixing of a reasonable compensation for the use of the highway, a facility furnished. As to the gasoline motor truck, the amount paid was contributed by and through the provision of the Nebraska registration law of the state and also through the Nebraska gasoline tax law. The contributions actually exacted thereby amounted to the sum derived from both forms of taxes. Substantial equality demands that all enjoying the use of the roads or the benefits of the facilities furnished pay therefor substantially an equal amount for the privileges they really enjoy, irrespective of the method of contribution employed. In the economy of the state it is the ultimate result that is important (the amount received from each), not the means or method by which that result is produced.

The case of *Interstate Busses Corporation v. Blodgett,* 276 U. S. 245, 48 S. Ct. 230; involves the principle the application of which the facts here invoke. In the *Blodgett* case, which involved the complaint of an interstate user of the highways of Connecticut, it appears that, "In addition to other taxes common to both classes, the owners of motor buses operated in interstate commerce pay in Connecticut, a tax of one cent for each mile of state highway traversed by each vehicle, but the owners of such vehicles engaged in intrastate commerce pay instead a tax on their gross receipts, the proceeds of both taxes being devoted to maintenance of highways. *Held* that a party

complaining of the mileage tax does not establish discrimination against interstate commerce by the mere difference of the taxes, but must prove that in actual practice the tax complained of falls with disproportionate weight upon him."

In addition, the following principles announced by the supreme court of the United States in such Blodgett case, are applicable to the questions presented by the present record:

"A state tax of one cent for each mile of highway traversed in the state by any motor bus used in interstate commerce, the proceeds of which are devoted to maintenance of public highways of the state, is not repugnant to the commerce clause of the Constitution, when not unreasonable in amount or discriminatory against interstate commerce.

"Such a charge, when reasonable in itself, is not to be deemed unreasonable because other taxes are imposed by the state on the same taxpayer for the use of its highways, if he fails to show that the aggregate charge is unreasonable."

See, also, *General American Tank Car Corporation v. Day,* 270 U. S. 367, 46 S. Ct. 234; *Travellers Ins. Co. v. Connecticut,* 185 U. S. 364, 22 S. Ct. 673.

It is obvious, under the principles settled by the foregoing precedents, that the imposition by the state of Nebraska of the assessments provided for in Legislative Bill No. 148 upon units 22, 42 and 43 involved herein is not to be deemed illegal because different in form and manner from that imposed on the gasoline units owned by plaintiff corporation, or because other taxes are imposed by the state on the same taxpayer for the use of its highways, if such taxpayer fails to show that the aggregate charge is unreasonable.

In view of the principles announced in the foregoing cases, it is obvious that the legality of an excise tax imposed upon the users in interstate commerce of the public highways of the state for the maintenance thereof is in

no manner dependent on the form in which imposed, or the fact that in some or a different form such a tax has been previously provided for, or whether one or more of such taxes may take the form of a flat tax graduated in accordance with the load capacity of the motor vehicles employed, or a mileage tax measured by the total distance covered, or a "gasoline tax" determined by the amount of motor fuel oil consumed. The determinative test in each case is whether the total of all amounts exacted under all the provisions of law relating thereto in any state is unreasonable in amount or discriminatory against interstate commerce. In the instant case there is no contention that as applied to gasoline trucks the Nebraska laws are unreasonable as to amount or discriminatory in their application.

The evidence in the record as to a comparison between a gasoline truck and a Diesel truck of equal tonnage with respect to the extent of highway occupied by each, the wear and damage inflicted to such highway, and the value of the use thereof as a facility furnished the public, is, from the standpoint of the state, substantially identical as to each.

It would necessarily follow that as reasonable compensation for the use of the place where their business is carried on, each of the users of the public highway should contribute as an excise tax an equal amount. It appears from available statistics that the average mileage covered by 10-ton licensed trucks in Nebraska in 1937 was 55,670 miles, and the average amount of gasoline consumed and paid for in making this average run would involve the payment of a gasoline tax of $397.64. On the basis of this comparison, it is obvious that the flat excise fee exacted from the 10-ton truck of $400 per annum is neither excessive nor discriminatory, and that the legislature has approximated their goal, to wit, a reasonable and just equalization fee between gasoline trucks and Diesel trucks so that each will pay substantially an equal amount for equal accommodations enjoyed within the state of Nebraska.

It will be noted that this is based upon the total payments made by each under all applicable legislation. The tax under consideration cannot be deemed excessive nor discriminatory because it is in the form of a flat rate per annum payable quarterly. This excise tax, considered as a charge, is for facilities furnished by the state, the reasonable value of which is largely determined by the nature and original cost of construction plus expenditures required to maintain the same. These reasonable charges are in no manner controlled or determined by the nature of the carrier's business nor the profits derived by it therefrom.

Justice Cardozo, in discussing a somewhat similar situation presented in *Aero Transit Co. v. Georgia Public Service Commission*, 295 U. S. 285, 55 S. Ct. 709, with reference to legislative employment of a "flat fee," employs the following language: "The fee is not for the mileage covered by a vehicle. * * * The fee is for the privilege of a use as extensive as the carrier wills that it shall be. There is nothing unreasonable or oppressive in a burden so imposed. (Citations) One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may."

We do not overlook plaintiffs' testimony based upon exhibit 1, statement of mileage; exhibit 2, statement of mileage; and exhibit 3, statement of costs. It will be noted that none of these exhibits was offered in evidence. By reason of their absence the statements of the witness based thereon lose much of their otherwise probative force. With reference to the cost study, to which the absent exhibit 3 is devoted, the witness says: "Our truck record is quite a comprehensive record and takes into consideration all trip expense, gas, oil, tolls, public service commission taxes, takes in the wages of the man driving the equipment, the repairs out on the road and in our shop, the tire wear, takes into consideration the depreciation and insurance and the license and overhead. I believe that covers it pretty well and after taking those items into consideration, we

have a total figure and dividing the miles into that total figure, gives us the cost per mile."

We take it from this witness that such cost study embodied all expenditures made in all the states in which business was transacted, but we are not informed as to the expenditures made in Nebraska, and as to the extent the actual receipts exceeded, if at all, the actual expenditures in this state, we have no information. True, certain expenditures made in behalf of the business as an entirety, as charges might be allocated in part to Nebraska, but the method of allocation of such items, if any such there were, and the principle followed in controlling the same are not divulged. In other words, the plaintiff corporation is challenging the Nebraska act because, in view of the total expenses incurred and chargeable in all the seven states in which it operates, with this Nebraska tax added, such business would be carried on at a loss. But plaintiff, in that connection, offers no proof that within the state of Nebraska, considered by itself, its services would be performed without adequate remuneration. It also appears that all units of Diesel type were largely withdrawn from Nebraska, and that thereby plaintiff corporation voluntarily failed to take full advantage of the privileges this law extended. It would seem that plaintiff, in view of the principles announced by Justice Cardozo in *Aero Transit Co. v. Georgia Public Service Commission, supra,* has failed to carry the burden of proof imposed by the nature of the issues presented.

In disposing of questions, in principle almost identical with those here presented, the supreme court of Wisconsin in *State v. Railroad Commission,* 196 Wis. 410, 220 N. W. 390, say, in part:

"Relator's real basis of attack seems to be that it does not have anything left with which to pay dividends after it has paid this ton-mile tax. Manifestly the ability of the relator to make a profit cannot be the factor that determines whether this law constitutes a valid exercise of legislative power. If this were the test, this law would

be valid as to the carrier by motor vehicles who testified that he conducted his business at a profit under this law, while it would be invalid so far as the relator was concerned because it does not make a profit. This is not and cannot be the measure of the power of the state to exact compensation for the use of its highways by those who are conducting a private business for gain over the same. The statute is a valid exercise of legislative power. If the compensation fixed for the use of the highways is such that the relator does not so manage its business as to make a profit, it cannot ask that the state forego its right to compensation for the use of its highways for business purposes, even if it should result in the discontinuance of relator's business. *Erie R. Co. v. Board of Public Utility Commissioners,* 254 U. S. 394, 411, 41 S. Ct. 169, 65 L. Ed. 322, 334. To prevail in this action relator must 'show that the aggregate charge bears no reasonable relation to the privilege granted.' *Interstate Busses Corporation v. Blodgett,* 276 U. S. 245, 48 S. Ct. 230."

A careful consideration of the legislation involved in this litigation, the validity of which is challenged by the appellees on the ground that certain provisions of our Constitution were transgressed in its enactment, convinces us that it is not vulnerable to the objections thus made. The basic charge appears to be that the enactment is amendatory in character, and that in its adoption section 14, art. III of our Constitution, was not conformed to. It is not deemed that these objections are well taken. Read in the light of its title, Legislative Bill No. 148, Laws 1939, was in effect an independent enactment, limited in scope and purpose, and analogous in principle to the legislation before this court in the cases of *Jackson v. Washington County,* 34 Neb. 680, 52 N. W. 169, *State v. Nolan,* 71 Neb. 136, 98 N. W. 657, and *State v. Minor,* 105 Neb. 228, 180 N. W. 84.

Our laws prior to the adoption of this act contained provisions taxing motor fuel oil as therein specifically described. This statutory definition did not include Diesel

fuel oil. This and certain similar products were not within the purview of any of our laws then in force. Legislative Bill No. 148, Laws 1939, as an independent act, supplied the omissions thus existing. Its enactment created a new but strictly limited subject of legislation not previously covered by law. It is therefore to be deemed and treated as independent legislation, for its subject was not governed by, embraced in, nor did it form a part of, any existing legislation. Neither do the references therein contained in any manner affect its essential character.

An independent act may incorporate within itself by reference provisions of another existing act, and the effect is the same as though the statute or a part adopted had been written into the adopting statute. *Richardson v. Kildow*, 116 Neb. 648, 218 N. W. 429; *State v. Moorhead*, 100 Neb. 298, 159 N. W. 412; *Sheridan County v. Hand*, 114 Neb. 813, 210 N. W. 273; *In re Estate of Mathews*, 125 Neb. 737, 252 N. W. 210.

But this procedure in no manner alters or changes the independent nature of the statute so adopting, nor does it accomplish thereby a change into an amendatory enactment. *Sheridan County v. Hand*, 114 Neb. 813, 210 N. W. 273.

The conclusion follows that Legislative Bill No. 148, Laws 1939, is, and must be deemed to be, a valid, independent, legislative enactment, and, as such, binding upon the parties to this litigation, and that the defendants hereinbefore named are entitled to the relief by them sought. It also follows that the district court erred in its findings and decree for the plaintiffs in this case. Therefore the findings, decree and judgment of the district court are reversed, and the cause is remanded for further proceedings in harmony with this opinion.

REVERSED.